Wood *v.* Mississippi Power Company, et al.

No. 42397 . November 12, 1962 146 So. 2d 546

*Curtis Breland,* Leakesville; *Morse & Morse,* Jackson, for appellant.

*Eaton, Cottrell, Galloway & Lang,* Gulfport; *Heidel-berg, Sutherland & McKenzie,* Hattiesburg, for appellee.

KYLE, J.

This case is before us on appeal by Dr. James P. Wood, plaintiff, from a judgment of the Circuit Court of Greene County rendered in favor of the Mississippi Power Company and Guy Walker, an employee of Sidney L. Ragland, an independent contractor, defendants, in an action for the statutory penalties for the wrongful cutting of trees on the plaintiff's land situated in Greene County.

The record shows that the Mississippi Power Company is a corporation engaged in the business of generating, transmitting, distributing and selling electric power and as such has power to condemn property by eminent domain proceedings; and that on February 9, 1960, it obtained from the Mississippi Public Service Commission a certificate of public convenience and necessity authorizing the company to survey, purchase right of way and construct approximately 50 miles of 115 kilovolt electric transmission line to connect the Waynesboro 115 KV substation and the Lucedale 115 KV substation. The Company contracted with Sidney L. Ragland, Consulting Engineer of Jackson, Mississippi, to make a survey of the proposed transmission line, to select the most advantageous route therefor and to lay the same out on the ground. The survey was begun during the latter part of 1960 and was completed in the early part of 1961. The cost of the survey was approximately $17,000.00. The purpose of the survey was: First, to select the most advantageous route for the construction of the transmission line from Lucedale to Waynesboro;

second, to mark the center line of the route on the ground with stakes; and third, to secure engineering data in the field for preparation of property maps to be used in the acquisition of rights of way, and preparation of profile sheets to be used by the design engineers to design a line adaptable to the particular property and route selected.

The preliminary layout of the 50-mile route was initially made by the Company's engineer by use of county maps and aerial photographs of the counties involved, selecting the most direct and advantageous route which it was possible to select with the use of the aerial photographs, so as to avoid obvious obstructions, such as swamps, rivers, roadways, large communities and even individual houses. The general tentative route thus selected was marked off with a red pencil line and the photographs were delivered to the survey contractor, Sidney L. Ragland, for further examination in the field. He and his survey parties then made the actual field survey, and determined, selected and marked the final location of the center line, making such alterations and adjustments as were necessary due to obstructions and terrain encountered in the field, which did not appear on the aerial photographs.

The record shows that, during the month of September or October, 1960, Ragland's survey party, with the appellee Guy Walker as party chief, while making the survey from Lucedale to Waynesboro, entered on the 500-acre tract of land owned by the appellant in Greene County, without consulting him, and ran two separate lines across five 40-acre tracts, a total distance of 6,631 feet. The land was unoccupied, open, wild land, with pit fences or improvements. The appellant at the time the survey was made, was a nonresident of the State of Mississippi. Guy Walker did not know who owned the land. The survey party, in making the survey across the appellant's land, cleared and trimmed underbrush

and also cut a number of small trees. It is undisputed that such clearing, cutting and trimming, as was done, was necessary in order to make the survey. The appellant's own forester, William A. Prather, testified that the survey was normal for such line, the usual type of cutting one would normally expect to see in the making of such survey. Although the appellant's declaration averred that 1036 trees were cut, the appellant's forester testified that 999 trees were cut ranging from the size of a pencil upward. Neither Prather nor the appellant stated definitely the size of the trees included in the count. The only witnesses actually testifying on this point agreed that no more than 25 trees four inches in diameter or larger were cut, and only a few of those were larger than 8 inches. The appellant was questioned as to the actual value of the trees which were cut. His answer was, ''The value was nominal. I was just fussing about the principle of the thing.'' When pressed for an estimated amount, he said, ''Around $100.''

The record also shows that the appellees entered upon the appellant's land to make the survey and did the cutting on the advice of counsel that they had the legal right to do so.

On April 11, 1961, the Mississippi Power Company instituted an eminent domain proceeding to condemn a 100-foot right of way through the property of the appellant and on the 24th day of April, 1961, the appellant applied for a writ of prohibition against the Power Company to stay the hearing in the court of eminent domain, and a temporary writ was issued. On April 28, 1961, the appellant filed his action in tort seeking to recover the statutory penalties provided for in Section 1075, Code of 1942, Rec., for the wrongful cutting of trees.

The appellant alleged in his declaration that the defendants, Mississippi Power Company and Guy Walker, acting under its direction, entered his land without his consent and unlawfully cut 1036 trees of various species

and demanded judgment in the amount of $12,660 for statutory penalties. The appellant did not seek to recover actual damages, but only statutory penalties. The appellees in their answer admitted entry on the appellant's land without his permission, but averred that the entry was made under the authority granted by Section 2776, Miss. Code of 1942, Rec., and a certificate of public convenience and necessity issued by the Mississippi Public Service Commission. The appellees admitted that Guy Walker and the members of the survey party did some clearing and trimming and cut a few trees of nominal value only, but averred that such cutting was necessary to make the survey. The appellees interposed a plea of good faith as an affirmative defense; and the appellees denied that they were liable for statutory penalties for the cutting of trees incident to the survey.

On November 8, 1961, the Court, after a hearing upon its merits, overruled the appellant's application for a writ of prohibition; and on November 14, 1961, the appellant's suit for the recovery of statutory penalties was tried before a jury. The question of good faith and the reasonableness of and necessity for the clearing and cutting were submitted to the jury, under proper instruction of the court. The jury returned a verdict for the defendants, and judgment was thereupon entered in favor of the defendants. From that judgment the plaintiff has prosecuted this appeal.

The main point argued on behalf of the appellant as ground for reversal of the judgment of the lower court is, that the court erred in holding that Mississippi Power Company had a right, either through its own efforts or through the agency of an independent contractor, to invade the possession of the appellant and to make such examination and survey as might be necessary to the selection of the route for the electric transmission line, without the appellant's knowledge or consent.

It is argued that the statute under which the Power Company claimed such right of entry upon the appellant's land (Code Section 2776, supra), is unconstitutional, for the reason that the statute is in conflict with Section 17 of the State Constitution of 1890, which provides that, "private property shall not be taken or damaged for public use, except on due compensation being first made to the owner or owners thereof, in a manner to be prescribed by law * * *." It is also argued that the statute is violative of Section 14 of the State Constitution, which provides that, "No person shall be deprived of life, liberty, or property except by due process of law."

It is also argued that, even if the Power Company had the right under Code Section 2776, as a public utility, to enter upon the appellant's lands and make the examination and survey, it could not employ an independent contractor, who did not have the right of eminent domain, and give him the protection which the Power Company itself would have had under the statute if the examination and survey had been made by the Power Company.

■■ ■ We think there was no error in the holding of the trial judge that the Power Company had the right to enter upon the appellant's land and make such examination and survey as was necessary for the proper location of the proposed transmission line.

Section 2751, Code of 1942, Rec., which appears as a part of the Code Chapter on Eminent Domain, provides that, "When any person or corporation having the right so to do shall desire to exercise the right of eminent domain, he or it shall make application therefor in writing, and the owners of the property sought to be condemned and * * * other persons having an interest therein * * *, shall be made defendants thereto, which shall state with certainty the right and describe the property sought to be condemned, showing that of each defendant separately."

Section 2776, Code of 1942, Rec., which also appears as a part of the Code Chapter on Eminent Domain, provides as follows: "Railroads, street or interurban railroads, mining, lighting, power, telephone and telegraph corporations, and all other corporations, * * *, having rights and powers to condemn property may cause to be made such examinations and surveys for their proposed railroads, lines and stations, as may be necessary to the selection of the most advantageous routes and sites, and for such purpose may, by their officers, agents and servants, enter upon the lands and waters of any person, but subject to liability for all damages done thereto."

It can be readily seen that the right of entry on property by a public utility, in good faith, for the purpose of making a preliminary examination and survey of the property with the view of condemnation has been recognized by the legislature as a necessary incident to the exercise of the right to condemn private property for public use. Similar authority has been granted to the State Highway Commission by Section 8023, Code of 1942, Rec.; and in Roberts v. Mississippi Power & Light Company, 193 Miss. 627, 10 So. 2d 542, this Court held that a person acting under authority of Code Section 8023, which appeared as Section 4998, Code of 1930, was not a trespasser, since his entry was lawful and, therefore, was not subject to the penalties and responsibilities of a trespasser.

In an extended annotation on the question as to the power of the legislature to authorize a body having the power of eminent domain to enter upon land for the purpose of preliminary surveys before commencement of proceedings to acquire it, the textwriter in 29 A.L.R., 1409, says there is abundance of judicial opinion that the legislature has such power, and numerous cases are cited to support that statement.

In State v. Simons (1906), 145 Ala. 95, 40 So. 662, the Court sustained the validity of a statute authorizing certain classes of companies to enter upon premises for the purposes of "examinations and surveys of their proposed railroad or lines, as may be necessary to the selections of the most advantageous routes," but subject to liability for all damages done thereto. The Court said: "The entering upon the premises for the purposes of 'examinations and surveys of their proposed railroad or lines, as may be necessary to the selection of the most advantageous routes,' is purely of a temporary nature, and in no proper sense a taking of the property, and consequently not a violation of the constitutional provision which requires that just compensation shall first be paid before property is condemned and taken for railroad purposes. The act in question does not undertake to deprive the owner of the premises of any right of action for any damage he may sustain by reason of such entry, but, on the contrary, expressly provides that it shall be 'subject to liability for all damages done thereto;' that is, to the lands so entered upon."

In the very recent case of LaFontaine's Heirs, etc. v. LaFontaine's Heirs, etc. (1954), 205 Md. 311, 107 A. 2d 653, the Court held that a constitutional prohibition against the taking of private property means taking property from the owner and actually applying it to the use of the public, and the authorized temporary occupancy or momentary entry on land for the purpose of inspection is not a taking under an eminent domain statute and may be done without compensation. The Court in its opinion in that case said: "The Constitutional prohibition against the taking of private property means: '* * * taking the property from the owner, and actually applying it to the use of the public. It does not mean the preliminary measures necessary in such cases.' Steuart v. Mayor, etc., of Baltimore, 7 Md. 500, 516."
In Alabama Interstate P. Co. v. Mt. Vernon-Woodberry

C. D. Co. (1913), 186 Ala. 622, 65 So. 287, the Court held that the right conferred by Code 1907, Sec. 3493, authorizing corporations possessing the right to condemn property to enter on property for examinations and surveys necessary for the selection of the most advantageous routes and sites, is necessarily incident and preliminary to authorized proceedings to condemn, and the right is not conditioned on any other contingency than that the corporations mentioned shall have in contemplation proceedings to condemn.

In the later case of Birmingham-Trussville Iron Co. v. Allied Engineers, Inc. (1932), 225 Ala. 522, 144 So. 1, the Court held that the entry by engineers to make a survey of a proposed electric power transmission line for a public utility having the right of eminent domain was a lawful entry by the public utility. The Court in its opinion in that case said:

"Under the pleadings and evidence in this case, the entry of the appellee upon the appellant's lands in question was in law the entry by the Alabama Power Company. The Alabama Power Company, a public utility corporation clothed with the right to acquire lands for public use in the conduct of its quasi public business, and authorized by statute to enter upon lands, which it contemplated acquiring for public use by condemnation, to examine and make surveys thereon for routes or lines, can only act by and through officers, agents or servants. In the instant case, under the pleadings and evidence, the appellee was contract agent of the Alabama Power Company to survey out a route for its electric power transmission line over lands of appellant, which it then contemplated acquiring by condemnation, and to construct the proposed line when surveyed and selected.

"If then the appellee was an agent of the power company in making the survey and in constructing the power line, and in performing this service, it had the right to enter upon the lands of the plaintiff to make the

survey, with a view to the selection of the most advantageous route, and it, in exercising this statutory right given the power company was not a trespasser, and would not be liable to appellant as for a trespass, unless, after entering upon the land, it (appellee) did some substantial injury to the property of the appellant in or about the business of making the examination or surveys authorized by the statute.''

 There is no merit in the appellant's contention that, even if the Power Company had immunity under Code Section 2776, supra, as a utility having the right to enter upon the appellant's land for the purpose of making such survey, it could not employ an independent contractor, who did not have the right of eminent domain, and clothe him with the protection which the Power Company would have had itself under the statute.

 An agent is not liable for torts committed by his principal personally; and if an act would not render the principal liable if done by him, under ordinary circumstances, an agent performing the act will not be liable. 3 C.J.S., 130, Agency, Sec. 220, and cases cited. See also Birmingham-Trussville Iron Co. v. Allied Engineers, Inc., supra; Ivy H. Smith Co. v. Warffemius (1953), 201 Md. 367, 93 A. 764; Harding v. Ohio Casualty Ins. Co. (1950), 230 Minn. 327, 41 N. W. 2d 818; Commercial Credit Corp. v. Harris (Tex. Civ. App. 1950), 227 S. W. 2d 886.

In Restatement of the Law, Agency, p. 757, Sec. 345, the rule is stated as follows:

''An agent is privileged to do what otherwise would constitute a tort if his principal is privileged to have an agent do it and has authorized the agent to do it.

''Comment:

a. One who is not privileged to act on his own behalf may exercise a privilege held by others if acting on their account and within the limits of their privilege. Thus, an agent who has no privilege of his own to enter

a particular tract of land may do so upon his principal's business if his principal is privileged to have an agent so enter * * *.''

The Power Company could act only through its officers, agents and servants. Walker's entry upon the appellant's land to make the survey was that of Sidney L. Ragland, the consulting engineer, who was contract agent of the Power Company to survey out a route for the proposed electric power transmission line through the appellant's land which the Power Company was to acquire by eminent domain proceedings.

It is next argued that Code Section 2776 itself provides that corporations having the right to condemn property, in exercising the right to have a survey made, shall be liable for all damages done thereto, and that the appellant for that reason was entitled to recover the statutory penalties imposed by Code Section 1075. But there is no merit in that contention. The damages for which the prospective condemnor is made liable under Code Section 2776 are damages to ''the lands and waters'' of the owner. Statutory penalties for the wrongful cutting of trees are not mentioned in Code Section 2776. Statutory penalties for the wrongful cutting of trees of the varieties mentioned in the appellant's declaration are provided for only in Code Section 1075; and in that section it is expressly provided that the defendant may establish good faith as an affirmative defense ''as to the statutory penalty'', which is the only ''damages'' sued for in the appellant's declaration.

This Court has defined the phrase ''good faith'' as used in Code Section 1075, as follows: ''The phrase 'good faith' as used in a statute such as we have here, denotes honesty of purpose, freedom from intention to defraud or to deprive others of rights or property to which in equity and good conscience they are entitled. In order to avoid liability for the statutory penalty in a case of this kind the defendant is not required to prove

freedom from negligence, but only that the trespass was not willful, or did not result from wantonness or recklessness." Strawbridge v. Day (1957), 232 Miss. 42, 98 So. 2d 122.

■■ When an act has been done in good faith, even though it may have resulted in injury to the plaintiff, in general there cannot be a recovery of punitive damages. 25 C.J.S., 727, Damages, Sec. 123e, and cases cited. It has been frequently held by this Court that punitive damages may be recovered only in cases when the acts complained of are characterized by malice, fraud, oppression, willful wrong, or gross negligence, evincing a disregard of the rights of others. Yazoo & M. V. R. Co. v. Mullen, 158 Miss. 774, 131 So. 101; Bradley vs. Associates Discount Corp., 230 Miss. 131, 92 So. 2d 468; Miss. Power Co. v. Byrd, 160 Miss. 71, 133 So. 193; Hudson v. Louisville & N. R. Co. (C.C.A. Miss.), 30 F. 2d 391.

■■ There is in our opinion no substantial evidence in the record in this case to show malice, fraud or intentional wrong doing, or a willful disregard of the rights of the appellant landowner through whose lands the line was run, or wantonness or oppression or other aggravating circumstances, or gross negligence, as defined by the courts. The issue as to the defendants' "good faith" in this case was properly submitted to the jury; and in our opinion there is ample evidence in the record to support the jury's finding in favor of the defendants.

It is next argued that the court erred in granting the defendant's Instruction No. 4, which appears on page 243 of the record. But we think there was no error in the action of the court in granting that instruction.

■■ Finally, it is argued that the court erred in refusing to grant Instruction No. 1 requested by the plaintiff in which the jury would have been told that if they believed from the evidence that the defendants

failed to establish good faith in their acts in cutting the trees, the jury should find for the plaintiff ''and fix his damage or damages at such sum or sums as would *compensate* Dr. Wood for the trees so cut.'' There was no error in the court's refusal to grant that instruction for the reason that the plaintiff in his declaration did not sue for compensatory damages or the actual value of the trees cut, but only for statutory· damages or penalties as itemized under Code Section 1075.

Other points have been argued, but we think there is no need for discussion of any of those points in this opinion. We find no error in the record which would warrant a reversal of the judgment of the lower court, and the judgment is therefore affirmed.

Affirmed.

*McGehee, C. J., and Gillespie, McElroy and Jones, JJ.,* concur.