**James P. MARTIN, Plaintiff,**

v.

**TEXACO, INC., Defendant.**

**Civ. A. No. 3634.**

United States District Court
S. D. Mississippi, S. D.

Aug. 29, 1969.

See also, D.C., 279 F.Supp. 1015.

James L. Norton, Houston, Tex., William M. Rainey, Gulfport, Miss., for plaintiff.

Oliver J. Butler, Jr., Houston, Tex., Hollis C. Thompson, Jr., Mize, Thompson & Mize, Gulfport, Miss., for defendant.

## MEMORANDUM OPINION ON MOTION FOR SUMMARY JUDGMENT

NIXON, District Judge.

Plaintiff, James P. Martin, filed this action against defendant, Texaco, Inc., for $96,000.00, actual damages, and $65,-000.00, exemplary damages, based on alleged unlawful or wrongful interference by defendant with an alleged contract entered into between plaintiff and one Hagan Parmley, for the purchase by Parmley from plaintiff of real and personal property.

In this suit filed on September 24, 1968, plaintiff contends that on or about February 12, 1964 Parmley, his cousin,

verbally offered to purchase from him certain real and personal property located in the State of Mississippi for the sum of $352,000.00 pursuant to which he and Parmley agreed to the purchase; that subsequent to said agreement, Parmley declined to consummate the purchase because of interference on the part of the defendant through certain employees thereof, which allegedly resulted in plaintiff's damages.

This Motion for Summary Judgment filed by the defendant is before the Court for its consideration based upon the Complaint and Answer filed herein as well as the deposition of the plaintiff, James P. Martin, taken by the defendant, together with exhibits attached thereto, which have been filed in this cause.

On May 2, 1960, pursuant to a written Consignment Agreement executed by plaintiff and defendant, plaintiff became a Consignee for defendant at Gulfport, Mississippi and he occupied this status until October 5, 1966 on which date the Consignment Agreement was mutually cancelled at the request of plaintiff pursuant to his right thereunder. As Consignee for defendant, plaintiff engaged in the wholesale distribution of Texaco Petroleum Products which were consigned to him by defendant and on which he received a percentage commission when sold by him. The agreement permitted defendant to make sales and deliveries in the areas served by plaintiff without obligation to pay plaintiff commissions thereon. This Consignment Agreement was subject to termination by either party on five days written notice and was not assignable by plaintiff without the written consent of defendant.

During the time that the Consignment Agreement was in effect, plaintiff became the fee owner, subject to mortgage, of five pieces of real estate in the State of Mississippi on which Texaco Service Stations were located and operated. These pieces of property together with the service stations thereon were leased by plaintiff to defendant on long term leases which accorded defendant an option to purchase them, and in turn, each was leased back to plaintiff by defendant on year-to-year leases which provided that they could not be assigned by plaintiff without the written consent of defendant. While the above leases were in effect, and pursuant to defendant's consent, each of these five service station properties was subleased from plaintiff by individuals who operated these stations as retail dealers. Plaintiff, as Consignee of defendant, sold and delivered Texaco Petroleum Products to each of these service stations receiving a percentage commission thereon. All of these leases were in full force and effect at all times material to this case, having been mutually cancelled on October 5, 1966, when defendant exercised its option to purchase the five service station properties from plaintiff and at which time the Consignment Agreement between plaintiff and defendant was also mutually cancelled.

The property which was the subject of the alleged offer made to plaintiff by Parmley and the alleged agreement between plaintiff and Parmley consisted of the above mentioned five service station properties and the business operated by plaintiff as Consignee for defendant, together with various other items of personal property and leasehold interests. Plaintiff acknowledges in his deposition that both he and Parmley were aware that defendant had a first option to purchase the service station properties, and that if defendant's purchase option was not exercised and Parmley did purchase the service station properties he would assume them subject to the provisions of the existing lease held by defendant thereon; that the Consignment Agreement between plaintiff and defendant was not assignable by plaintiff without the written consent of defendant; that defendant's approval of Parmley to be its Consignee was a prerequisite to Parmley succeeding plaintiff as such; and that if defendant did approve Parmley it was not obligated to afford him the same terms which it had given plaintiff therein, but that the terms of any business arrangements between defendant and

Parmley, in the event of defendant's approval of him as its Consignee, would be subject to negotiation between Parmley and defendant. Both plaintiff and Parmley notified defendant of Parmley's desire to purchase the properties and Consignment rights in question and in fact, Parmley had requested defendant's approval to become its Consignee.

Plaintiff, in his deposition, admitted that the alleged offer of Parmley and agreement entered into pursuant thereto between Parmley and plaintiff was conditioned upon Parmley being approved by defendant to replace plaintiff as Consignee in Gulfport and Parmley being accorded favorable and satisfactory terms under the existing Consignment Agreement or any new Consignment Agreement, particularly with reference to commissions on the sale and delivery of Texaco Petroleum Products to the five service stations involved in the alleged offer and agreement.

It is undisputed that the alleged interference by defendant complained of by plaintiff and which is the basis of this action consisted of and was limited to a letter dated March 11, 1964 addressed to Parmley and written by W. H. Shelley, Division Salesmanager for the defendant, which is Defendant's Exhibit 5 to the deposition of the plaintiff taken by defendant and filed herein. The pertinent portion of this letter is the final paragraph thereof which reads as follows:

"I think it is only fair that I call your attention to the fact that should the ownership of the five stations on which we hold leases from Mr. Martin change to new owner, it is entirely possible that our Company would decide to make deliveries direct to these stations rather than have the deliveries made by our Gulfport, Miss., Bulk Plant consignee. We would certainly carefully study the cost of direct delivery vs. consignee delivery, and should it be more profitable for us to handle these locations on a direct de-

livery basis, then possibly our Management would instruct us to so handle."

In support of its motion, the defendant first contends and argues that since the alleged offer and subsequent agreement in question were not in writing as required by the Mississippi Statute of Frauds,[1] there was no enforceable contract to be interfered with and thereby no basis for this cause of action.

The Mississippi Statute of Frauds specifically provides that a contract for the sale of "lands, tenements, or hereditaments" is invalid and unenforceable unless it is in writing. Plaintiff admits in his deposition that neither the alleged offer from Parmley nor the alleged agreement entered into pursuant thereto between plaintiff and Parmley was ever reduced to writing (See pages 11–14 and 25–26 of Plaintiff's Deposition). The only possible basis upon which plaintiff could possibly contend that the agreement in question complied with the requirements of the Statute of Frauds were two letters transmitted to defendant by plaintiff, both being dated February 12, 1964 [2] quoting two completely different purchase prices. Parenthetically, it is noted that Defendant's Exhibit 3 to the Deposition of Plaintiff, a letter which was transmitted by plaintiff to defendant which purports to bear the signature of Hagan Parmley as purchaser, was acknowledged by plaintiff not to be Parmley's signature, and although plaintiff in his deposition attempts to engage in surmise or conjecture that someone perhaps had authority to sign Parmley's signature to this letter, no affidavit or other evidence was or has been offered to that effect in contest of this Motion. Furthermore, it is quite evident to the Court that the signature of Parmley appearing on Defendant's Exhibit 6 to Plaintiff's Deposition purporting to be Parmley's true signature is quite different from that signature just referred to. The Court is of the opinion that neither

---

1. Miss.Code of 1942, Rec. sec. 264.

2. Defendant's Exhibits 2 and 3 attached to Plaintiff's Deposition.

these two letters nor anything else in evidence or properly before this Court evidences compliance with the Mississippi Statute of Frauds, and thus the agreement which was allegedly interfered with by defendant does not meet the requirement thereof, which is in effect admitted by the plaintiff in his brief filed in opposition to this motion. It should also be noted that Hagan Parmley died approximately two years prior to the time that this suit was filed and cannot be questioned concerning this alleged agreement; thus, plaintiff's deposition testimony, together with the above mentioned letters, is the only evidence of the terms and conditions of the alleged agreement in question.

Apparently admitting that the agreement in question was not entered into in compliance with the Mississippi Statute of Frauds and is thus unenforceable between the parties thereto, plaintiff contends that this suit is simply a tort action for interference by the defendant, which constitutes a collateral proceeding, preventing the defendant from raising the defense of the Statute of Frauds inasmuch as the Statute is a personal privilege of the contracting parties sought to be charged, and is not available to anyone else in a collateral proceeding.

The Mississippi Statute of Frauds specifically provides that no action shall be brought "whereby to charge a defendant or other party" upon a contract not in compliance with the Statute and thus at first blush it would appear that no cause of action exists against the defendant herein for alleged interference with a contract which was itself invalid and unenforceable. No Mississippi cases are found which specifically deal with the question whether a contract must satisfy the requirements of the Statute of Frauds in order to be the basis of a suit for interference. In the case of Grisham v. Lutric and Chandler, 76 Miss. 444, 24 So. 169 (1898), the Mississippi Supreme Court stated that if parties to a contract, avoidable under the Statute of Frauds

at the election of either, do not repudiate it, third persons having no interest in it cannot question its validity in a collateral controversy, and that the Statute as a defense is personal to the parties to the contract and thus is not available to a stranger in a collateral proceeding. However, the Court indicated that the Statute would be a legitimate defense in a case where one of the parties to an oral contract was asserting a claim based on such oral contract or in a case wherein such defense was being urged by one not a stranger thereto. In a more recent case this same Court stated again that the Statute of Frauds is a personal privilege of the contracting parties sought to be charged and is not available to anyone else in a collateral proceeding. Wirtz v. Gordon, 187 Miss. 866 at 881, 184 So. 798, 192 So.2d 29 (1938).

It is recognized that there is a division of authority as to whether a contract need satisfy the Statute of Frauds to be the subject of a suit for interference;[3] however, the basis of the decisions upholding the right to sue for interference has been that the alleged interferer was a stranger to the contract. In the instant case, this Court does not find that the defendant Texaco is a "stranger" to the contract in question but in fact had a vital financial interest therein, and furthermore that the performance of the alleged agreement was actually conditioned upon the occurrence of certain events within the complete discretion and control of the defendant, Texaco. Thus, this Court agrees with the Texas Court of Civil Appeals which, in a case involving the same legal principle, held that it would be legally incomprehensible that defendant would be liable for interfering with a contract which was itself not actionable, particularly here where Texaco's interest or rights were legally and factually intertwined. Davidson v. Oakes et al., 60 Tex.Civ.App. 269, 128 S.W. 944 (1910).

Therefore, this Court finds and holds that under the facts and circumstances

3. 30 Am.Jur., Interference, sec. 24, Fn. 2; 26 A.L.R.2d 1243, 84 A.L.R. 49, sec. 3(b).

of this case defendant would not be liable for interfering with a contract or agreement which, because of noncompliance with the Mississippi Statute of Frauds, was in itself not actionable by and between the parties thereto.

Assuming however that plaintiff is not precluded from bringing this action for the above reasons, nevertheless this Court is of the firm conviction that the defendant is entitled to a summary judgment herein for the following reasons.

■ It is well established that in order for a cause of action to exist for interference with a contract, it must be proved that the contract in question would have been performed "but for" the wrongful interference of the defendant. Restatement of Torts, secs. 766, 769, 773; 86 C.J.S. Torts §§ 43, 44; 30 Am. Jur., Interference, secs. 21, 28, 38. This principle has been recognized and adopted by the Supreme Court of Mississippi. Bailey et al. v. Richards, 236 Miss. 523, 111 So.2d 402, 406–407 (1959).

■ It is equally well established that the interference complained of must be wrongful in order to be actionable and that any interference is not wrongful and actionable if undertaken by someone in the exercise of a legitimate interest or right, which constitutes "privileged interference." Irby et ux. v. Citizens National Bank of Meridian, 239 Miss. 64, 121 So.2d 118, 119 (1960); Bailey et al. v. Richards, supra; Wesley v. Native Lumber Co. et al., 97 Miss. 814, 53 So. 346, 347 (1910); Restatement of Torts, secs. 767–774; 86 C.J.S. Torts § 44; 30 Am.Jur., Interference, secs. 21, 33, 41.

It is apparent that based upon the above well established principles of law that the undisputed facts of the instant case require this Court to grant the defendant's Motion for Summary Judgment. The alleged offer and agreement on which plaintiff's suit is based was strictly conditional upon the future occurrence of certain events as to which the defendant not only had a financial or business interest, but also the undisputed and admitted right of determination and control, that is, the Consignment Agreement between plaintiff and defendant was not assignable by plaintiff without the written consent of the defendant and defendant's approval of Parmley to be its Consignee was a prerequisite to his succeeding plaintiff. Thus, plaintiff's suit does not satisfy the "but for" requirement. Furthermore, it is undisputed and agreed between the parties hereto that the sole alleged interference by the defendant upon which plaintiff bases this suit was the letter written by defendant's Division Salesmanager, W. H. Shelley, to Hagan Parmley on March 11, 1964, Defendant's Exhibit 5 to Plaintiff's Deposition filed herein. In this letter the defendant merely advised Parmley of defendant's right under Paragraph IV(d) of Schedule A to the Consignment Agreement (Defendant's Exhibit 1 to Plaintiff's Deposition) to make sales and deliveries in the areas served by the Consignee, in which event the Consignee would not be entitled to any commissions thereon.

Federal Courts and State Courts, including those of the State of Mississippi have adhered to the principle of law that even if a party "interferes" with the formation or execution of a contract, if he has a legitimate interest therein or a contractual right to perform said act it is privileged and thus not wrongful and actionable.

The United States Court of Appeal for the Second and Fourth Circuits have spoken on this subject. In Pierce Ford Sales, Inc. et al. v. Ford Motor Co., 299 F. 2d 425 (CA 2, 1962), cert. den. 371 U.S. 829, 83 S.Ct. 24, 9 L.Ed.2d 66 (1962), plaintiff had entered into an agreement with another for the sale of its Ford dealership contract, the approval of a successive dealer being within the discretion of the defendant, Ford. The prospective purchaser of the dealership declined to consummate the purchase when Ford informed him that the proposed purchase price was too high and that he would not be approved as its successive dealer. This resulted in plaintiff bringing an action against Ford for wrongful

interference. The Court of Appeals held that *no cause of action existed* against Ford and directed a verdict for the defendant stating at 299 F.2d 429:

" * * * Not only was the proposed contract expressly conditioned on Ford's approval but even without such a condition Ford would be justified in protecting its own interest to have a dealer financially sound. Under the common law doctrine, interference is actionable when one who, *without a privilege to do so,* purposely causes a third person not to enter into a business relation with another. Restatement of Torts sec. 766. * * * Certainly there was no evidence of malicious conduct by Ford's representatives. On the contrary Ford had a *privilege* to give the advice it gave. * * * " (Emphasis supplied)

In the above case plaintiff also charged Ford with wrongful interference with another agreement between plaintiff and another prospective purchaser of plaintiff's dealership contract based on the fact that the defendant informed the prospective purchaser that the value of plaintiff's business would be less than represented and further that the defendant might not approve the successive dealer. The Court of Appeals also held that no cause of action existed against the defendant in this cause of action because:

" * * * we know of no common law doctrine which requires one party to assist the other to sell his assets in the absence of a contractual obligation to assist him. * * * Since Ford was to execute a dealership agreement with the purchaser and might, in its discretion, decline to do so, [Ford's] expression of opinion cannot be deemed unlawful interference. * * * "

The United States Court of Appeals for the Fourth Circuit dealt with this question in the case of Zoby v. American Fidelity Co. et al., 242 F.2d 76 (CA 4, 1957). In this case defendant, a surety

for a contractor who had defaulted on a construction contract with the United States Navy, being responsible for indemnifying the Navy for costs in excess of the amount agreed upon in the defaulted contract, took bids of replacement contractors and initially recommended plaintiff as an acceptable replacement contractor. Thereafter it recommended another contractor who had submitted a higher bid. The Navy awarded the contract to the subsequent high bidder and plaintiff sued defendant alleging that defendant had unlawfully and maliciously interfered with plaintiff's prospective contract with the Navy which would have been executed but for defendant's subsequent recommendation. The Court of Appeals affirmed the District Court's entry of summary judgment for defendant stating:

"Regarding the cause of action in tort alleged in the amended complaint for wrongful and malicious interference with a prospective contract with the Navy, it is well settled that there may be recovery not only for interference with the performance of a contract already executed, but also for preventing the making of a contract if it would have been consummated *but for* the *wrongful* interference. * * * The District Judge ruled and, we think, correctly, that *assuming that the Navy would have awarded the contract to Zoby but for the defendants' interference, the interference was, under the circumstances, privileged.* Where the alleged interferer is a financially interested party and such interest motivates his conduct, it cannot be said that he is an officious or malicious intermeddler. * * * Restatement of Torts, Sec. 769.

"Assuredly, the defendants had an economic interest in the award of the completion contract, * * *

" * * * The concept which we think underlies the privilege is that if an individual acts under an economic interest that is substantial, not merely

**504**

*de minimis,* wrongful and malicious motives are negatived, for he acts in self-protection. \* \* \* It is sufficient if the impetus for his conduct lies in a proper business interest rather than in wrongful motives." (Emphasis added)

The Supreme Court of the State of Mississippi has consistently adhered to the above principles of law pointing out that interference is not actionable unless it is "wrongful," that is, unless it was "without right or justifiable cause on the part of defendant". Irby et ux. v. Citizens National Bank of Meridian, 239 Miss. 64, 121 So.2d 118 (1960); Bailey et al. v. Richards, 236 Miss. 523, 111 So. 2d 402 (1959); Globe and Rutgers Fire Insurance Co. v. Fireman's Fund Insurance Co. et al., 97 Miss. 148, 52 So. 454, 455–456, 29 L.R.A.,N.S. (1910). See also Millers Mutual Casualty Company v. Insurance Exchange Building Corp. et al., 218 Ill.App. 12 (1920) in which the Illinois Appellate Court held that plaintiff had no cause of action against defendant based on an allegation that defendant has tortuously interfered with an agreement between plaintiff and its prospective sublessee by virtue of the fact that defendant had advised the latter that it would not permit plaintiff to sublet the premises to anyone, which right had been specifically reserved in the lease contract, the Court holding that the particular facts upon which plaintiff predicated the alleged wrongdoing did not amount to an actionable tort and that the defendants acted within their right as defined by the lease and thus did not willfully and wrongfully cause a breach of the proposed contract between the plaintiff and the prospective sublessee.

In conclusion, the undisputed and uncontroverted facts of record in this case clearly show that the alleged offer and alleged agreement upon which plaintiff's suit is founded, were conditional upon the occurrence of events as to which the defendant had a legitimate interest and control. Also, the alleged interference by defendant consisted of action within the scope of this legitimate financial interest and control. Actually, defendant merely advised Parmley and made him aware of its rights and privileges under Paragraph IV(b) of Schedule A of the Consignment Agreement entered into between plaintiff and defendant and further advised him that it would possibly take advantage of its right thereunder. This advice did not, in this Court's opinion, constitute wrongful interference with the execution of the purported agreement between plaintiff and Parmley, because to say the least, this "interference," if such it was, was privileged and thus did not constitute an actionable tort.

It is well settled that in order to successfully resist a Motion for Summary Judgment, the party against whom it is sought must present some evidence to indicate that the facts are in dispute where the moving party's evidence has shown otherwise, and here the record reveals no such evidence to dispute the defendant's proof, the bare allegations of the complaint to the contrary. See Rule 56(e), F.R.Civ.P.; Zoby v. American Fidelity Co. et al., supra; Chambers & Co. v. Equitable Life Assurance Society, 24 F.2d 338, 345–346 (CA 5, 1955).

In view of the fact that there is no genuine issue as to any material fact in this case and there is no basis in law or in fact for plaintiff's suit, the defendant is entitled to a Summary Judgment as a matter of law.

The defendant may submit to the Court a Summary Judgment within the time prescribed by the Rules of this Court.