500 So.2d 954 (1986)
Nelson C. VESTAL, d/b/a Nelson C. Vestal Insurance Agency, Mrs. Nelson C. Vestal and Nelson C. Vestal, Jr.
v.
William Harold ODEN.
No. 55854.
Supreme Court of Mississippi.
September 24, 1986.
Rehearing Denied February 11, 1987.
John L. Low, IV, Douglas J. Gunn, Watkins & Eager, Jackson, for appellants.
Daniel H. Fairly, Stratton & Fairly, Brookhaven, V. Douglas Gunter, Jackson, Al Felder, McComb, for appellee.
Before HAWKINS, P.J., and ROBERTSON and GRIFFIN, JJ.
GRIFFIN, Justice, for the Court:
The appellee brought suit against Nelson C. Vestal, d/b/a Nelson C. Vestal Insurance Agency; two of his employees, his wife, Mrs. Vestal, and his son, Nelson C. Vestal, Jr.; Mutual of Omaha Insurance Company; and the United of Omaha Insurance Company, alleging damages for the breach of an employment contract. The companies, hereinafter called "Mutual" were dismissed on a motion for summary judgment, and the case proceeded to trial against the Vestals.
This is an appeal by the Vestals from a judgment against them in the amount of $150,000.00, entered pursuant to a jury verdict. There is no cross-appeal on the sustaining of the summary judgment; therefore, we are called upon to address the issue as to whether or not there was a tortious interference with the employment contract by the Vestals.
The appellee entered into his employment contracts with Mutual on February 2, 1968 as an insurance agent, with his territory described as being that of Vestal and Vernon Agency (Vernon was originally a partner in the Agency but no longer associated at the time of this suit). The contract was signed on behalf of Mutual by Vernon, with subsequent amendments signed on behalf of the Companies by Vestal, the remaining partner. The appellee was fired by Vestal.
This appeal, for all practical purposes, was decided adversely to the appellee on November 13, 1985, when Judge Robertson wrote an opinion in Shaw v. Burchfield, 481 So.2d 247 (Miss. 1985). The facts there are basically the same as here, except to say that the power vested in the Vestal Agency by Mutual was greater than that vested in the individual defendant employees of Southern Farm Bureau Company in Shaw v. Burchfield, supra. Here, as there, the contracts of employment provide that either party could terminate the contract by written notice. No particular period of time was required. In Shaw v. Burchfield, supra, in passing upon the tortious interference question, we said:

*955 As a separate theory of recovery, Shaw has charged that the individual Defendants tortiously interfered with the contracts existing between him and the Farm Bureau Insurance Companies. This claim, as with the others, was dismissed in the Circuit Court via summary judgment.
Without doubt, our law recognizes, on behalf of one whose contractual relationship has been tortiously interfered with, a right of recovery from the interferor. Protective Service Life Insurance Co. v. Carter, 445 So.2d 215, 219 (Miss. 1983). One who intentionally and improperly interferes with the performance of a contract between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for pecuniary loss resulting to the other from the failure of the third person to perform the contract. Restatement (Second) of Torts § 766 (1979); see Cranford v. Shelton, 378 So.2d 652, 655 (Miss. 1980); Southwest Drug Co. v. Howard Brothers Pharmacy of Jackson, Inc., 320 So.2d 776, 778 (Miss. 1975); Irby v. Citizen National Bank of Meridian, 239 Miss. 64, 67, 121 So.2d 118, 119 (1960); Bailey v. Richards, 236 Miss. 523, 536-37, 111 So.2d 402, 407 (1959). On the other hand, one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person. Restatement (Second) of Torts § 770 comment b, illustration 3 (1979).
We note that numerous cases from other states recognize that there is no right of recovery on the part of a discharged employee against one said to have interfered with a contract terminable at will. Rockwell v. Automatic Timing Co., 559 F.2d 460 (7th Cir.1977); Hansen v. Barrett, 183 F. Supp. 831, 833 (D.Minn. 1960); Noah v. L. Daitch & Co., 22 Misc.2d 649, 192 N.Y.S.2d 380, 386 (1959); Luisoni v. Barth, 2 Misc.2d 315, 137 N.Y.S.2d 169, 172 (1954); Davis v. Alwac International, Inc., 369 S.W.2d 797, 802 (Tex. 1963); Kingsbery v. Phillips Petroleum Co., 315 S.W.2d 561, 576 (Tex. 1958). These cases procede on the premise that, where there has been no breach of contract, conceptualizing a tortious interference fails as a matter of elementary legal logic.
The individual Defendants here were officers and agents of the various Farm Bureau Insurance Companies. The record establishes without contradiction that they had responsibilities with respect to Shaw's employment with those companies and the three contracts in issue. Where a corporation has a contract with another, and where an individual who is an agent of the corporation has responsibilities with respect to the contract, any actions taken in good faith within the scope of those responsibilities are privileged and thus not actionable. Irby v. Citizens National Bank of Meridian, 239 Miss. 64, 121 So.2d 118, 119 (1960); Wesley v. Native Lumber Co., 97 Miss. 814, 53 So. 346, 347 (1910); Martin v. Texaco, Inc., 304 F. Supp. 498, 502 (S.D.Miss. 1969). There being no showing of bad faith in the record sufficient to avoid summary judgment, and there otherwise being no genuine issue of material fact, we hold that the trial judge correctly determined the Defendants entitled to judgment as a matter of law.
481 So.2d at 254-55.
We have searched the record and are unable to find any evidence that would dispute the fact that Vestal, as the general agent for Mutual over the entire state of Mississippi, held the unquestioned power to terminate the contracts in question.
The evidence reflects that Vestal was the general agent for Mutual in the state of Mississippi, and had been since 1951. Due to his failing health, many of his duties had been delegated to his wife and son. The appellee signed his contract with the Company by signing through the agency, appellants, on February 2, 1968. He was terminated for participating in uncondoned competition with Mutual by selling other insurance *956 policies comparable to those offered by Mutual. Appellee's conduct that seemed to irritate the Vestals and Mutual to the greatest degree was the recruiting of agents of Mutual, trained by them, to sell insurance for other companies.
It was admitted that throughout the life of the Vestal agency it had hired and fired insurance agents and most often without consulting the home office. However, in this case, Mrs. Vestal did contact the home office and obtain consent.
The appellants held many responsibilities with regard to all of the agents of Mutual in the state (including Oden) including but not limited to the collection and remission of premiums solicited by the agents, payment of the agents' commissions, even to the payment of their appointees, the right to withhold payment of commission or deferred compensation to offset any indebtednesses to the general agent (the Vestals) and to Mutual arising out of insurance policy premiums.
It was established by the Vestals and two executive officers of the Mutual companies, including the general counsel, that the Vestals had the power to hire and fire. The general agency contract, designated as a "Manager's" Contract for the state of Mississippi, specifically provided for hiring, and firing had been a matter of policy, inasmuch as the general agent was better acquainted with what was going on in his area than someone in Omaha. Oden states that his contract was terminated, yet admits he did not receive this word from Mutual but was terminated by the Vestal agency. He further stated that he had been a unit manager for the Vestal agency, and that his sub-agents were terminated by the agency and not by Mutual. Generally, the evidence, oral and documentary, clearly established that Oden was hired by and supervised by Vestal. The general agent was his "boss".[1]
Also, the manager's contract (Vestal's) provided that the Vestals receive a stated commission on all policies written in the state of Mississippi. The agent's contract (Oden's) stated that he receive a certain commission on all policies that he wrote in Vestal's territory; his area within the territory was designated by Vestal. The commission received by the manager was greater than that received by the agent; however, the amount actually received by the manager was the difference between his commission and that received by the agent. For example, if the manager's commission was 70% of the premium, and the agent's commission 60% thereof, the manager got 10%.
The record reveals that Oden had been a unit manager and that he gave up this position and went back to his original position as an agent, and the apparent reason therefor was so that he could receive commissions from companies other than Mutual. (It is apparent from the record that unit managers exercised powers over the agents in the field). Therefore, the Vestals had a legitimate business interest in the commissions to be received by the agents it had hired and trained, which Oden admittedly hired for another company.
In Martin v. Texaco, 304 F. Supp. 498 (S.D.Miss. 1969), Judge Nixon, in granting a motion for summary judgment, stated:
It is equally well established that the interference complained of must be wrongful in order to be actionable and that any interference is not wrongful and actionable if undertaken by someone in the exercise of legitimate interest or right, which constitutes `privileged interference.' Irby v. Citizens National Bank of Meridian, 239 Miss. 64, 121 So.2d 118, 119 (1960); Bailey v. Richards, 236 Miss. 523, 111 So.2d 402 (1959); Wesley v. Native Lumber Company, 97 Miss. 814, 53 So. 346 (1910); Restatement of Torts, §§ 767, 774; 86 C.J.S., Torts § 44; 30 Am.Jur., Interference §§ 21-33-41.
... .

*957 Federal Courts and State Courts, including those of the State of Mississippi have adhered to the principle of law that even if a party `interferes' with the formation or execution of a contract, if he has legitimate interest therein or a contractual right to perform said act it is privileged and thus not wrongful and actionable.

... .
The Supreme Court of the State of Mississippi has consistently adhered to the above principles of law pointing out that interference is not actionable unless it is `wrongful', that is, unless it was `without right or justifiable cause on the part of defendant'. (citations omitted).
304 F. Supp. at 502-04 (emphasis added).
In the instant case, this Court does not find that the defendant Texaco is a `stranger' to the contract in question but in fact had a vital financial interest therein and furthermore that the performance of the alleged agreement was actually conditioned upon the occurrence of certain events within the complete discretion and control of the defendant, Texaco.
304 F. Supp. at 501.
To the same effect is MacKenzie v. Chrysler Corporation, 607 F.2d 1162 (5th Cir.1979), wherein that Court sustained Judge Keady's grant of defendant's motion for directed verdict. The general rule in this state is that there is no tortious interference when one has a justifiable interest and reason for acting. Irby v. Citizens National Bank of Meridian, 239 Miss. 64, 121 So.2d 118 (1960); Standard Fruit and Steamship Company v. Putnam, 290 So.2d 612 (Miss. 1974); Southwest Drug Company v. Howard Brothers Pharmacy of Jackson, Inc., 320 So.2d 776 (Miss. 1975).
From the record, it is abundantly clear that the Vestals had a legitimate interest in Oden's contract and their conduct here does not amount to bad faith. The home office was informed by Mrs. Vestal of Oden's conduct in soliciting the agents and consent was given to terminate his contract.
Accordingly, we hold that the contract, according to its terms, was terminable at will. The agency (appellants) held responsibilities with respect to Oden's employment with Mutual and bad faith does not appear from the record. Therefore, the appellant's firing of the appellee was privileged. No cause of action was shown.
We are of the opinion that what is said above is ample to dispose of the question before us. However, the liability of an agent for a tort committed when acting for the principal should be addressed. Oden was discharged by Vestal. There appears to be no question, at least it is not raised, that Oden was effectually terminated  terminated by Vestal, an agent of Mutual.
In Wood v. Mississippi Power Co., 245 Miss. 103, 146 So.2d 546 (1962), the Court was confronted with the liability of an agent for a tort committed by him on behalf of the principal. There an engineer, not a regular employee of the Mississippi Power Company but acting under a contract, surveyed lands and in doing so cut a number of trees on the land of Wood without the knowledge or permission of Wood. The Court held that the company, having the power of eminent domain and a certificate from the Public Service Commission authorizing the survey, was not liable for statutory penalties. It was argued that the company's statutory immunity did not extend to the surveyor. The Court, in passing on this question, said the following:
An agent is not liable for torts committed by his principal personally; and if an act would not render the principal liable if done by him, under ordinary circumstances, an agent performing the act will not be liable. 3 C.J.S., 130, Agency, Sec. 220, and cases cited. See also Birmingham-Trussville Iron Co. v. Allied Engineers, Inc. [225 Ala. 522, 144 So. 1 (1932)] supra; Ivy H. Smith Co. v. Warffemius (1953), 201 Md. 367, 93 A.2d 764; Harding v. Ohio Casualty Ins. Co. (1950), 230 Minn. 327, 41 N.W.2d 818; Commercial Credit Corp. v. Harris (Tex.Civ.App. 1950), 227 S.W.2d 886.

*958 In Restatement of the Law, Agency, p. 757, Sec. 345, the rule is stated as follows:
"An agent is privileged to do what otherwise would constitute a tort if his principal is privileged to have an agent do it and has authorized the agent to do it.
"Comment:
a. One who is not privileged to act on his own behalf may exercise a privilege held by others if acting on their account and within the limits of their privilege. Thus, an agent who has no privilege of his own to enter a particular tract of land may do so upon his principal's business if his principal is privileged to have an agent so enter * * *."
245 Miss. at 117-18, 146 So.2d 546.
Oden's contract with Mutual clearly provided that it was terminable at will; therefore, under the authority of Wood, supra, the Vestals have no liability to Oden.
The lower court should have directed a verdict in the first instance and, not having done so, should have given the requested peremptory instruction or sustained the motion for judgment notwithstanding the verdict.
REVERSED AND RENDERED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
DAN M. LEE and ANDERSON, JJ., not participating.
NOTES
[1] See signs in plants and offices that read "The boss is not always right, but he is always the boss".