United States Court of Appeals,

Fifth Circuit.

No. 93-7661.

Phillip COCKERHAM, John A. Cockerham, Jr. and John Cockerham, Sr., Plaintiffs-Appellants,

v.

KERR-McGEE CHEMICAL CORPORATION, Defendant-Appellee.

June 16, 1994.

Appeal from the United States District Court for the Northern District of Mississippi.

Before WISDOM, DAVIS, and DUHÉ, Circuit Judges.

DUHÉ, Circuit Judge:

Appellants, Phillip Cockerham, John A. Cockerham, Jr. and John Cockerham, Sr., appeal from the district court's grant of summary judgment for Appellee, Kerr-McGee Chemical Corporation. Appellants sued Kerr-McGee for fraudulent and negligent misrepresentation; tortious interference with a prospective contract; quantum meruit and unjust enrichment. The district court held that Appellants had failed to establish a genuine issue of material fact on any of the claims and dismissed all claims with prejudice. We affirm.

BACKGROUND

The following facts are undisputed. Kerr-McGee Chemical Corporation wanted to raise a levee on a sedimentation pond at its manufacturing plant in Hamilton, Mississippi. The Cockerhams[1]

---

[1] Phillip and John Cockerham are partners in Hamilton Gravel Company. Phillip and John's father, John Cockerham, Sr., was to supply financial assistance to his sons. The district court concluded that a joint venture existed and ordered that John Sr. be made a party.

contacted James Hargis ("Hargis"), Kerr-McGee's manager of operations and planning, to determine if Kerr-McGee required fill dirt. Hargis told the Cockerhams that they could attend the pre-bid meeting as a potential supplier of fill dirt. The proposed prime contract distributed during the pre-bid meeting provided that the prime contractor would purchase and supply the fill dirt. The proposed contract also specified the type of dirt, but did not note the source or location of the dirt to be used.

The Cockerhams found approximately 170 acres of land north of and adjacent to Kerr-McGee's plant site known as the Keaton Estate. According to Phillip Cockerham, he had a verbal agreement to purchase the Keaton Estate and had made financing arrangements for that purchase. Hauling dirt from this site rather than other sites south of the plant was preferable.

On June 3, 1990, Kerr-McGee received bids from potential prime contractors. Yates Construction Company (Yates) and Phillips Contracting Company (Phillips) were the lowest bidders, but Kerr-McGee rejected both bids.

Thereafter, the Cockerhams reported to Hargis that they had located a potential fill dirt site on the Keaton Estate. Hargis disclosed this information to Yates and Phillips. The Cockerhams, Hargis, Henry Seawell, Kerr-McGee's consulting engineer, and representatives from Yates and Phillips met at the Keaton Estate to examine the fill dirt. Upon Hargis's request, the Cockerhams dug a test hole on the Keaton Estate, approximately a hundred feet from Kerr-McGee's property.

2

Yates and Phillips resubmitted their bids using the fill dirt from the Keaton Estate, but their second bids were also rejected. After digging test holes on its own property, Kerr-McGee decided to use fill dirt from its property and requested that Yates resubmit its bid using Kerr-McGee's fill dirt. Yates's bid was accepted resulting in a substantial savings to Kerr-McGee. Kerr-McGee had used its own fill dirt for other projects in the past.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In reviewing the summary judgment, we apply the same standard of review as did the district court. *Waltman v. International Paper Co.,* 875 F.2d 468, 474 (5th Cir.1989). The pleadings, depositions, admissions, and answers to interrogatories, together with affidavits, must demonstrate that no genuine issue of material fact remains. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To that end we must "review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.,* 784 F.2d 577, 578 (5th Cir.1986). If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

II. Misrepresentation

The Cockerhams allege that Hargis induced Phillip Cockerham into revealing the location of the Cockerhams' intended supply of dirt by promising them that he would keep this information confidential. The Cockerhams allege both fraudulent and negligent misrepresentation. The Cockerhams have failed, however, to establish a genuine issue of material fact as to either claim.

The first element of the tort of negligent misrepresentation is "a misrepresentation or omission of a fact." *Bank of Shaw v. Posey,* 573 So.2d 1355, 1360 (Miss.1990). The representation must be based on past or presently existing facts rather than merely consisting of a promise. *Id.* Because the Cockerhams only allege representations of a future promise, they cannot succeed in bringing a claim of negligent misrepresentation.

To establish fraudulent misrepresentation, the Cockerhams must prove, by clear and convincing evidence, the following elements: (1) a representation; (2) its falsity; (3) its materiality; (2) the speaker's knowledge of its falsity, or ignorance of the truth; (4) the speaker's intent that it should be acted on by the hearer and in a manner reasonably contemplated; (5) the hearer's ignorance of its falsity; (6) the hearer's reliance on its truth and his right to rely thereon; and (7) the hearer's consequent and proximate injury. *Spragins v. Sunburst Bank,* 605 So.2d 777, 780 (Miss.1992). In cases where fraud is alleged, a representation based on a promise is actionable if it is a contractual promise made with the present intent of not

4

performing it.  *Bank of Shaw,* 573 So.2d at 1360.

The Cockerhams complain that Hargis misrepresented to them that he would keep the location of the dirt supply confidential from other Kerr-McGee officials.  There is no dispute that Hargis was Kerr-McGee's agent when he was dealing with the Cockerhams. Under Mississippi general agency law, " "knowledge acquired by an agent when transacting his principal's business will be imputed to his principal although not communicated to him.' " *Pittman v. Home Indemnity Co.,* 411 So.2d 87, 89 (Miss.1982) (quoting *Home Ins. Co. v. Thornhill,* 165 Miss. 787, 144 So. 861, 863 (1932)).  Thus, Hargis could not promise to the Cockerhams to keep information confidential from other Kerr-McGee officials because as a matter of law they were deemed to know it the moment it was told to Hargis.

As for disclosure to third parties, Kerr-McGee informed only Yates and Phillips of the potential dirt supply.  The Cockerhams neither allege nor offer summary judgment evidence of any injury suffered from the disclosure of the fill dirt location to these third parties.

Alternatively, the Cockerhams argue that when Hargis told them he would keep the information "in confidence," he was promising that Kerr-McGee would not misappropriate the information about the location of the dirt supply.  Misappropriation of a trade secret is an actionable wrong.

A trade secret is defined as a " "formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over

5

competitors who do not know or use it.' " *ACI Chems., Inc. v. Metaplex, Inc.,* 615 So.2d 1192, 1195 (Miss.1993) (quoting *Cataphote Corp. v. Hudson,* 422 F.2d 1290, 1293 (5th Cir.1970)). "Where a process or idea is so common, well known or readily ascertainable that it lacks all novelty, uniqueness and originality, it necessarily lacks the element of privacy necessary to make it legally cognizable as a trade secret." *Cataphote Corp. v. Hudson,* 444 F.2d 1313, 1315 (5th Cir.1971).

Assuming that the location of the dirt supply on Keaton Estate was a trade secret to the Cockerhams, Kerr-McGee neither used the dirt from that property nor gave the information to a competitor of the Cockerhams. Therefore, the Cockerhams have failed to demonstrate that Kerr-McGee misappropriated the Cockerhams' knowledge in this respect.

As for the argument that Kerr-McGee misappropriated the idea of using dirt north of the plant, we conclude that this was not a trade secret as a matter of law for the Cockerhams. The Cockerhams do not dispute that Kerr-McGee had used dirt from its own land in other projects. In fact, Phillip Cockerham testified that prior to beginning his search, he voluntarily asked Hargis why Kerr-McGee did not use the dirt on their land and informed Hargis that Kerr-McGee probably had suitable dirt. Kerr-McGee found the suitable dirt on its land through independent testing performed by its employees. The Cockerhams cannot now argue that the location of the fill dirt site was its trade secret when they had previously volunteered the information and Kerr-McGee could readily ascertain

6

whether suitable dirt existed.

III. Interference with a Prospective Contract

The Cockerhams argue that Kerr-McGee tortiously interfered with its potential contract with the prime contractor, Yates.[2] To prevail on a claim for tortious interference with a prospective contract, the Cockerhams must establish that (1) there was a reasonable probability that they would have entered into a contractual relationship; (2) Kerr-McGee acted maliciously by intentionally preventing the relationship from occurring for the purpose of harming the Cockerhams; (3) the acts were done without right or justifiable cause; and (4) harm or damage occurred as a result of Kerr-McGee's conduct. *Hubbard Chevrolet Co. v. General Motors Corp.,* 682 F.Supp. 873, 877 (S.D.Miss.1987), *aff'd,* 873 F.2d 873 (5th Cir.), *cert. denied,* 493 U.S. 978, 110 S.Ct. 506, 107 L.Ed.2d 508 (1989).

The parties' disagreement focuses on the malice element and whether Kerr-McGee acted without right or justifiable cause. Malice is the " "intentional doing of a wrongful act without legal or social justification.' " *Cranford v. Shelton,* 378 So.2d 652, 655 (Miss.1980) (quoting *Ramondo v. Pure Oil Co.,* 156 Pa.Super. 217, 48 A.2d 156 (1946)). Kerr-McGee argues that it had the right to change the specifications in its prime contract before a bid was awarded and a legitimate business interest in reducing its costs by

---

[2]The Cockerhams do not argue on appeal that Kerr-McGee interfered with an existing contract and, thus, have abandoned this claim. *See Marple v. Kurzweg,* 902 F.2d 397, 399 n. 2 (5th Cir.1990).

using its own fill dirt. The Cockerhams respond that financial self-interest should not be an absolute defense because most interference claims relate somehow to a company's profit motive.

Kerr-McGee's interest extended, however, beyond mere financial interest; it had a potential contractual relationship with the prime contractor. In *Martin v. Texaco, Inc.,* 304 F.Supp. 498, 502 (S.D.Miss.1969), the plaintiff had a verbal agreement with a third party to sell its service stations and its consignment business with the defendant, a petroleum supplier. The consignment agreement required the defendant's approval of the plaintiff's successor. *Id.* at 499. When defendant advised the potential successor that it would exercise its contractual right to sell in the consignee's area if it were profitable to do so, the plaintiff sued for tortious interference. *Id.* at 500. The court found that the defendant's actions constituted a "privileged interference":

> The alleged offer and agreement on which plaintiff's suit is based was strictly conditional upon the future occurrence of certain events as to which the defendant not only had a financial or business interest, but also the undisputed and admitted right of determination and control....

*Id.* at 502; *see also Davenport v. St. Paul Fire & Marine Ins. Co.,* 978 F.2d 927, 933 (5th Cir.1992) (" "Absolute rights, including ... the right to enter or refuse to enter into contractual relations, may be exercised without liability for interference without reference to one's motive as to any injury directly resulting therefrom.' ") (quoting 45 Am.Jur.2d *Interference* § 23).

The parties do not dispute that the Cockerhams' agreement with Yates was conditional on Yates's being awarded the prime contract.

8

Kerr-McGee's bid proposal allowed it to reject the original bid terms and amend the contract terms. Kerr-McGee exercised that right and its actions were within the scope of its legitimate interest.

IV. Quantum meruit

If their actions at law fail, the Cockerhams assert that they are entitled to recover under the doctrine of quantum meruit. They assert that a genuine issue of material fact exists as to whether Kerr-McGee knew that acceptable fill dirt was located on its property.

A person may recover for services rendered on a quantum meruit basis if the "circumstances are such as to warrant an inference of an understanding by the person performing the work, that the person receiving the services, intends to pay for it." *Kalavros v. Deposit Guaranty Bank & Trust Co.,* 158 So.2d 740, 744 (Miss.1963). Recovery in quantum meruit is measured by the reasonable value of materials or services rendered. *Estate of Johnson v. Adkins,* 513 So.2d 922, 926 (Miss.1987).

Even assuming a genuine issue remains as to whether Kerr-McGee knew that suitable dirt existed on its property, the Cockerhams have failed to demonstrate that their services were rendered under the reasonable expectation that Kerr-McGee knew about and would pay for the services being performed. The Cockerhams initially contacted Kerr-McGee, inquiring whether the levee project would need fill dirt. Phillip Cockerham testified that he begun an investigation of possible sites even before the

9

pre-bid meeting.  The Cockerhams knew that the prime contractor, not Kerr-McGee, would supply and pay for the fill dirt.  The Cockerhams have adduced no summary judgment evidence that would lead a rational trier of fact to find that it had a reasonable expectation of being compensated by Kerr-McGee for their search of the fill dirt prior to a final contract with the prime contractor.

V. Unjust Enrichment

The Cockerhams also seek to recover the extent to which Kerr-McGee was unjustly enriched by its savings in using its own dirt. "[A]n action for "unjust enrichment' lies in a promise, which is implied in law, that one will pay to the person entitled thereto which in equity and good conscience is his."  *Magnolia Federal Savings & Loan Ass'n v. Randal Craft Realty Co.,* 342 So.2d 1308, 1311 (Miss.1977).  A person is enriched when he receives a benefit whether it is a profit or a loss avoided.  *Omnibank of Mantee v. United S. Bank,* 607 So.2d 76, 92 (Miss.1992).  "What is important ... to remember is our law accepts no value condemning pursuit of wealth, so long as it be done within legal parameters.  There is nothing inherently unjust about enrichment."  *Id.*

Whether Kerr-McGee benefitted from the Cockerhams discovery of the adjacent dirt site is not a material fact;  the issue is whether that benefit was unjust.  We find that it was not.  Kerr-McGee had the legal right to use its own dirt.  It was not obligated either to purchase dirt from the Cockerhams or require the prime contractor to purchase dirt from them.  In sum, the Cockerhams have no entitlement to the savings of Kerr-McGee.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment for Kerr-McGee is AFFIRMED.