**Richard GOSSARD, et al., Plaintiffs,**

v.

**ADIA SERVICES, INC., Defendant.**

**No. 91–11–CIV–T–17(B).**

United States District Court,
M.D. Florida,
Tampa Division.

Sept. 5, 1995.

---

Amy Lyn Koltnow, The Whittemore Law Group, P.A., St. Petersburg, FL, Ronald M. DeHaan, Randolph E. Ruff, David S. Adduce, DeHaan & Richter, P.C., Chicago, IL, Hendrik Uiterwyk, Uiterwyk & Associates, Tampa, FL, for Richard B. Gossard, Joyce S. Gossard, Barney Dewees, John Daly, Nursefinders of Sarasota, Inc., Nursefinders of St. Petersburg, Inc., and Nursefinders of Mobile, Inc.

Stanley Howard Eleff, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mullis, P.A., Tampa, FL, David J. Butler, Tacie H. Yoon, Brownstein & Zeidman, P.C., Washington, DC, for Adia Services, Inc.

## ORDER

THOMAS G. WILSON, United States Magistrate Judge.

THIS CAUSE came on to be heard upon the Renewed Motion of Defendant Adia Services, Inc. for Judgment As A Matter of Law or for A New Trial (Doc. 208). At the hearing, the defendant clearly demonstrated that it did not "induce or otherwise cause" a breach of contract. It established further that the plaintiffs' theory of damages was fundamentally flawed. Consequently, the defendant's motion should be granted, and judgment entered in its favor.

### I.

In about 1974, Larry Carr started a business in Texas in which he provided nurses on a temporary basis. The business was successful, and in 1978–79 he began selling franchises through a franchisor that subsequently took the name of Nursefinders, Inc. Franchise purchasers included the individual plaintiffs, who bought franchises covering, among other areas, Florida's west coast.

The people who purchased franchises in this area were long-time friends of Carr. At the time the sales of the franchises were being negotiated, Carr agreed with the franchisees that neither Nursefinders, nor its parent or affiliates, would provide similar services within the franchise territory.[1]

About the beginning of 1987, the defendant, Adia Services, Inc., purchased the company that came to be called Nursefinders. Approximately one and one-half years later, Adia purchased a company named Star–Med that was also involved in the field of temporary nursing help. Adia contends that Star–Med was different from, and compatible with, the Nursefinders' franchisees. Adia asserts, specifically, that Star–Med operated a touring nurse program where nurses were sent from one area of the country to another for a period of 13 weeks, whereas the franchisees ran a business that provided nurses locally for a short time. There was evidence, however, from which the jury could reasonably find that the two businesses competed, and that they competed within the plaintiffs' territories.

In this suit, the plaintiffs alleged in Count I that Adia had tortiously interfered with their franchise agreements with Nursefinders. The theory of the tort wavered throughout the trial. The plaintiffs settled on the contention that, by purchasing Star–Med, the defendant caused Nursefinders to violate its promise that neither a parent nor affiliate would provide similar services within a franchisee's territory. Although this theory seemed to me to be of doubtful validity, it was sent to the jury to see whether the theory had been factually established. There were plainly factual disputes, such as the construction of the franchise agreements, that could have ended the matter if resolved in the defendant's favor. The jury, however, found for the plaintiffs on the factual questions. This circumstance thus raises the issue whether the plaintiffs' theory on Count I is legally viable.

### II.

■ The *Second Restatement of Torts* defines the tort of intentional interference with a contract as follows (§ 766):

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

There was no evidence that, with respect to the franchise agreements, the defendant induced Nursefinders to do anything. Thus, the question here is whether the defendant "otherwise caus[ed]" Nursefinders to violate the franchise agreements.

---

1. The defendant argues that the plaintiffs are bound by the terms of the franchise agreements, which do not provide such broad exclusivity. Both sides to the agreements, however, testified to their understanding, and the jury could have reasonably found that there was the broad exclusivity arrangement, as the plaintiffs alleged. It seems to me that in this tort action the parol evidence rule should not operate to negate the stated intent of both sides to the various franchise agreements.

The Comments to § 766 of the *Restatement* explain that "otherwise causing" refers to the situation where, unlike the circumstances involving inducement, the tortfeasor "leaves [the contracting party] no choice," that is, he affirmatively prevents the party from carrying out the contract. *Restatement (Second) of Torts* § 766 cmt. h. Examples of this are "when A imprisons or commits such a battery upon B that he cannot perform his contract with C, or when A destroys the goods that B is about to deliver to C." *Id.* Another example is "when performance by B of his contract with C necessarily depends upon the prior performance by A of his contract with B and A fails to perform in order to disable B from performing for C." *Id.*

This case does not involve a situation that even roughly approximates the examples given in the *Restatement*. The evidence indisputably shows that, with respect to the franchise agreements, the defendant took no action at all toward Nursefinders.

The plaintiffs contend, however, that Nursefinders had promised its franchisees that no parent or affiliate would provide nursing services within their territory, and that when the defendant purchased Star–Med it caused Nursefinders to break that promise. While the defendant may have "caused" Nursefinders to be unable to carry out the agreements within some broad dictionary meaning of that term, it did not cause Nursefinders to breach the agreements in the legal sense. The *Restatement*, which in essence requires a contracting party either to be induced not to perform, or to be prevented from performing, his contractual obligations, clearly demands something far more direct than what occurred here to Nursefinders.[2]

A hypothetical example submitted by Adia demonstrates the invalidity of the plaintiffs' claim. Suppose, the defendant says, that General Motors (GM) executes an agreement in which it promises its dealers in Pinellas County that only GM cars would be sold in that county. Further, GM sends a copy of that agreement to Ford, in order to make sure that Ford has knowledge of the agreement. Surely, the defendant argues, Ford cannot be liable for intentional interference with contract if it sells its cars in Pinellas County contrary to GM's promise.

This hypothetical, in my view, shows the lack of merit in the plaintiffs' claim. In this case, the only additional circumstance presented is the corporate relationship between the defendant and Nursefinders. However, the two are separate legal entities. Moreover, Nursefinders had no authority to make a promise that would bind Adia. Indeed, recognizing that a contrary assertion would be self-defeating in this tort action, *see Genet Company v. Annheuser–Busch, Inc.* (sic), 498 So.2d 683, 684 (Fla.App.1986), the plaintiffs acknowledge that Adia is not a party to the franchise agreements and is not contractually bound by them. But since Adia is not bound by the franchise agreements, its situation is not meaningfully different from that of Ford in the defendant's hypothetical.

The plaintiffs, nevertheless, argue that, while Nursefinders' promise to its franchisees could not create contractual liability for the defendant, it did create tort liability for Adia. How this could be so was not explained. It seems to me either that Nursefinders could legally speak for the defendant, in which case the defendant would be subject to contract liability and not tort liability, or that Nursefinders could not legally speak for the defendant, in which case Nursefinders' promise created no liability at all on the defendant's part.

In all events, the circumstances here gave rise only to contract liability. Nursefinders, according to the jury, made a promise that was not kept. Liability for the violation of that promise should fall on Nursefinders, the party that made the promise, and not upon the defendant, a party that gave no such undertaking. Significantly, Nursefinders was in a position to protect its promise when it sold out to the defendant, but it did not do so. The plaintiffs, despite these circumstances, did not sue Nursefinders for breach of the franchise agreements, but sued the defendant in tort instead. That tactic was a

---

2. Neither side has found a case like this one. Moreover, contrary to the plaintiffs' contention, their cases are distinguishable. Thus, they all involve at least a direct impact upon a contracting party's ability to perform its obligations.

mistake because, under the facts of this case, the defendant did not commit a tort.

## III.

■■■ Adia also contends that the jury's damage award cannot be sustained. To the extent that the defendant argues that the evidence fails to show causation or injury, that argument is contradicted by the evidence. Thus, assuming that Star–Med's operations under the defendant's ownership could legally cause harm, there was evidence in the record from which the jury could reasonably find that the plaintiffs were damaged by Star–Med's business. The far more serious question is whether the plaintiffs properly proved the extent of that damage.[3]

The *Restatement* makes clear that a party injured by intentional interference with a contract is entitled to recover its "pecuniary loss." *Restatement (Second) of Torts* §§ 766, 774A. Accordingly, the jury was given the following instruction (Doc. 195, p. 17):

> The plaintiffs claim damages for lost profits and loss of present value in their franchises. Damages of those types may be awarded in an appropriate case if sufficiently established. With regard to any recovery by the plaintiffs, you should take care not to award duplicate damages.

However, the plaintiffs' damage expert, Robert Yerman, did not focus on the plaintiffs' losses. Rather, his damage analysis was predicated upon the theory that the plaintiffs were entitled to credit for all of Star–Med's sales during the period it was owned by Adia (Doc. 205, pp. 16–17). This approach resulted from Yerman's view that under the terms of the franchise agreements Adia had an obligation to turn over all of Star–Med's business in the plaintiffs' territories to the plaintiffs (Doc. 205, pp. 18–19, 59).

Importantly, any suggestion that Adia caused the plaintiffs to suffer a loss of all of the business done by Star–Med in the plaintiffs' territories is contrary to the facts and economic reality. In the first place, Star–Med had substantial business in the plaintiffs' territories prior to its purchase by Adia, and there is absolutely no reason to think the plaintiffs would have gained any of that business in the absence of the purchase. Furthermore, because of the strong competition within the plaintiffs' territories in the field of temporary nursing help, it is uncertain how much, if any, of Star–Med's business the plaintiffs would have acquired if Star–Med, instead of being purchased, had simply closed its doors.

As indicated, however, Yerman did not predicate his damage theory on the economic facts. Rather, his approach was based upon his view that the franchise agreements required Adia to give all of Star–Med's business within the plaintiffs' territories to the plaintiffs. But this notion is simply wrong. As previously explained, Adia was not a party to the franchise agreements and was not contractually bound by them. Under that circumstance, it cannot plausibly be said that Adia was obligated to turn over Star–Med's business to the plaintiffs. In other words, Yerman's theory would improperly award contract damages in this tort case. If the plaintiffs wanted contract damages, they should have sued Nursefinders.

Although the plaintiffs argue to the contrary, Yerman's testimony provided the sole basis for the amount of the jury's award. Since that testimony was wrong at its core, the jury's verdict cannot stand.

It is not enough to conclude, however, that the jury's verdict should be overturned. The question then becomes whether that conclusion warrants judgment for the defendant, or only the granting of a new trial.

---

**3.** The plaintiffs contend that the defendant has waived its right to challenge causation, the fact of damage, the theory of damages, and the sufficiency of the evidence of damages as a result of a failure to move for judgment as a matter of law under Rule 50, F.R.Civ.P. (Doc. 211, p. 28). This contention appears correct as to causation and the fact of damage. It is not correct with respect to the attack on the theory of damages. The defendant vigorously and fully challenged the plaintiffs' damage theory at the charge conference (Doc. 204, pp. 31–40). Since Rule 50(a)(2), F.R.Civ.P., provides that motions for judgment as a matter of law "may be made at any time before submission of the case to the jury," the defendant's attack on the damage theory during the charge conference was timely and sufficient.

Rule 50(b), F.R.Civ.P., provides that, "[i]f a verdict was returned, the court may, in disposing of the renewed motion [for judgment as a matter of law], allow the judgment to stand or may reopen the judgment and either order a new trial or direct the entry of judgment as a matter of law." As the court of appeals has explained in a case involving insufficient proof of damages, Rule 50(b) gives the court discretion to enter judgment or to grant a new trial. *Network Publications, Inc. v. Ellis Graphics Corp.*, 959 F.2d 212 (11th Cir.1992). Generally, where a defect in proof could be expected to be cured at a second trial, the granting of a new trial is the preferred option. *Id.*

■ In this case, however, circumstances militate against simply granting a new trial. In the first place, plaintiffs' counsel had to know that Yerman's damage theory was subject to serious challenge. Nevertheless, they proceeded solely on that theory, even though they had received an earlier opinion using a different approach from another expert from Yerman's firm (Doc. 205, pp. 86–91). It seems to me that having elected to proceed into a two-week trial on only Yerman's dubious (but more lucrative) theory, the plaintiffs should not now be given a second chance to present an alternative method.

Furthermore, it is questionable whether the plaintiffs could reasonably establish damages with a different approach. Thus, there is some indication that, if competition is properly taken into consideration, an expert would be unable to assess damages with any degree of accuracy (Doc. 205, p. 91). Significantly, the plaintiffs failed to take advantage of the opportunity to submit a memorandum on this issue (Doc. 216), and consequently, they have not provided any information showing that at a new trial they could prove substantial damages with sufficient certainty.

For these reasons, the plaintiffs' failure to prove damages warrants judgment as a matter of law. However, it is appropriate to add that, if it should be subsequently determined that a new trial is the appropriate remedy, then obviously the defendant's alternative request for a new trial should be granted. On the other hand, if it is concluded that Yerman's damage theory is legally sufficient, then the motion for new trial should be denied, since Yerman's testimony would support the jury's verdict.

It is, therefore, upon consideration

ORDERED:

That the Renewed Motion of Defendant Adia Services, Inc. for Judgment As A Matter of Law or for A New Trial (Doc. 208) be, and the same is hereby GRANTED, and the Clerk is directed to enter judgment in favor of the defendant Adia Services, Inc.

DONE and ORDERED.