723 So.2d 182 (1998)
Richard B. GOSSARD, et al., Appellants,
v.
ADIA SERVICES, INC., Appellee.
No. 91389.
Supreme Court of Florida.
October 15, 1998.
Rehearing Denied December 28, 1998.
*183 Uiterwyk & Associates, Tampa, and Gary A. Magnarini of Hicks & Anderson, P.A., Miami, for Appellants.
David J. Butler and Robert V. Zener of Swidler & Berlin, Chartered, Washington, D.C., for Appellee.
PER CURIAM.
We have for review the following question of Florida law certified by the United States Court of Appeals for the Eleventh Circuit that is determinative of a cause pending in the federal courts and for which there appears to be no controlling precedent:
WHETHER FLORIDA LAW RECOGNIZES A CLAIM FOR TORTIOUS INTERFERENCE AGAINST A CORPORATION WHICH PURCHASES AS A SUBSIDIARY A CORPORATION WHICH HAS A PREEXISTING OBLIGATION NOT TO COMPETE AGAINST ITS FRANCHISEE, PLAINTIFF HEREIN, AND SUBSEQUENTLY PURCHASES ANOTHER SUBSIDIARY WHICH IS IN DIRECT COMPETITION WITH THE FRANCHISEE?
Gossard v. Adia Services, Inc., 120 F.3d 1229, 1231 (11th Cir.1997). We have jurisdiction. Art. V, § 3(b)(6), Fla. Const. For the reasons expressed in this opinion, we answer the question in the affirmative provided there is evidence proving the elements of tortious interference with a business relationship we set forth in Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812 (Fla.1994).
The Court of Appeals set forth the following relevant background information:
In 1974, Larry Carr founded a business which provided nurses to health care facilities and private clients on a temporary basis. Within four years, Carr began selling franchises subsequently named Nursefinders, Inc. In May of 1986, Richard Gossard purchased a franchise which covered, among other areas, Florida's west coast. The franchise agreement contained an exclusivity clause which provided that neither Nursefinders "nor any person or firm authorized or licensed by it shall establish an office for the purposes" of providing competing services within the franchise territory. However, Carr and Gossard testified that during negotiations over the franchise, they agreed that neither Nursefinders, nor its parent or affiliates, would provide similar services within the franchise territory.
In the beginning of 1987, Adia purchased Nursefinders. In June of 1988, Adia purchased Star-Med, a company likewise involved in the field of temporary nursing help.
Gossard then filed this action alleging that by purchasing Star-Med, Adia caused Nursefinders to violate its promise of noncompetition within a franchisee's territory. In defense, Adia argued that it did nothing to interfere with and was under no contractual or fiduciary duty to abide by the exclusivity clause of the franchise agreement between Nursefinders and Gossard. The jury found for Gossard on the factual issues and awarded $2,488,000.
Gossard, 120 F.3d at 1230-31.
In the federal district court, the United States magistrate stated:
In this suit, the plaintiffs alleged in Count I that Adia had tortiously interfered with their franchise agreements with Nursefinders. The theory of the tort wavered throughout the trial. The plaintiffs settled on the contention that, by purchasing Star-Med, the defendant caused Nursefinders to violate its promise that neither a parent nor affiliate would provide similar services within a franchisee's territory. Although this theory seemed to me to be of doubtful validity, it was sent to the jury to see whether the theory had been factually established. There were plainly factual disputes, such as the construction of the *184 franchise agreements, that could have ended the matter if resolved in the defendant's favor. The jury, however, found for the plaintiffs on the factual questions. This circumstance thus raises the issue whether the plaintiffs' theory on Count I is legally viable.
Gossard v. Adia Services, Inc., 922 F.Supp. 558, 560 (M.D.Fla.1995). In beginning his analysis of whether Gossard's legal theory was viable under Florida law, the magistrate noted that Florida defines the tort of intentional interference with a contract consistent with the Restatement (Second) of Torts, which provides:
One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.
Restatement (Second) of Torts, § 766 (1979). Finding no evidence which would suggest that Adia "induced" Nursefinders to breach the franchise agreement, the magistrate addressed whether Adia "otherwise caused" Nursefinders to violate its franchise agreements. The magistrate concluded that Adia did not "otherwise cause" Nursefinders to violate the franchise agreements and entered a judgment as a matter of law in Adia's favor. The court reasoned that "[Adia] took no action at all toward Nursefinders" and that the Restatement "clearly demands something far more direct than what occurred here to Nursefinders." Gossard, 922 F.Supp. at 561. On appeal, the circuit court framed the issue as whether "Adia `otherwise caused' Nursefinders to violate the franchise agreements." Gossard, 120 F.3d at 1231. Finding no Florida case law on point, the circuit court certified the aforementioned question.
The Eleventh Circuit, in its opinion certifying this question to us references our decision in Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So.2d 812 (Fla.1994), in which we set forth the elements of tortious interference with a business relationship:
The elements of tortious interference with a business relationship are "(1) the existence of a business relationship ... (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla.1985). A protected business relationship need not be evidenced by an enforceable contract. Id. However, "the alleged business relationship must afford the plaintiff existing or prospective legal or contractual rights." Register v. Pierce, 530 So.2d 990, 993 (Fla. 1st DCA 1988).
Id. at 814. We further stated that:
As a general rule, an action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered.
Id. at 815.
From the factual background provided by the federal circuit and district courts, we understand Gossard's claim to be based on the following assertions. Nursefinders and Gossard had an "agreement" that neither a parent nor affiliate of Nursefinders would provide similar health care services within Gossard's territory. Adia was aware of this "agreement" at the time it purchased Nursefinders. Adia then purchased Star-Med, a direct competitor of Gossard located in Gossard's territory. Consequently, Star-Med became Nursefinders' affiliate by virtue of their common parent, Adia. Therefore, by purchasing Star-Med, Adia knowingly caused Nursefinders to be in breach of its "promise" to Gossard that neither a parent nor affiliate of Nursefinders would provide similar health care services within Gossard's territory. Stated another way, because of Adia's purchase of Star-Med, Nursefinders had "no choice" but to be in violation of its franchise agreement with Gossard. See Restatement *185 (Second) of Torts, § 766 cmt. h. (1979).[1]
Assuming the trial record contains sufficient evidence to support this theory, we conclude that these allegations establish a prima facie case of tortious interference under our decision in Ethan Allen. We hold that our precedent is consistent with section 766 of the Restatement and comment h. thereto. Gossard's assertions regarding Adia's conduct in this case fall within the "otherwise causing" language of the Restatement.
Accordingly, we answer the certified question in the affirmative on the basis we have stated in this opinion and return the record to the United States Court of Appeals for the Eleventh Circuit.
It is so ordered.
HARDING, C.J., and OVERTON, SHAW, WELLS and PARIENTE, JJ., concur.
ANSTEAD, J., dissents with an opinion, in which KOGAN, J., concurs.
ANSTEAD, J., dissenting.
For the reasons expressed below, I would answer the certified question in the negative.[2] I fear that the majority has allowed its sympathy for Gossard's plight to blind it to the narrow question presented to us, and thereby to erroneously expand the definition and application of our established law. Instead of focusing on the narrow question of law posed by the Eleventh Circuit, the majority has looked into the underlying facts and, unfortunately, has responded with a creative but dangerous exercise in economic regulation which penalizes lawful commercial competition in Florida.[3] In other words, the outcome here appears to be a new twist to the old adage that "hard cases make bad law."
The certified question expressly limits itself to the conduct of a "corporation which purchases as a subsidiary a corporation which has a preexisting obligation not to compete against its franchisee, plaintiff herein." Gossard v. Adia Services, Inc., 120 F.3d 1229, 1231 (11th Cir.1997). The "preexisting obligation" referred to is, of course, the written contractual obligation of Nursefinders not to compete with its franchisee, Gossard. However, the majority ignores the explicit text of the certified question, and, instead, expands and redefines the question as one involving a subsidiary corporation that not only has a "preexisting obligation not to compete against its franchisees" but one that also has orally promised "that neither a parent nor affiliate" would compete. See Majority op. at 183.
Hence, the majority announces that it finds "Gossard's claim to be based on the following assertions" and goes on to imaginatively find a cause of action based upon Gossard's *186 assertion of an oral promise by Nursefinders that neither its parent company or any other business "affiliates" would compete with Gossard. In doing so, the majority not only ignores the question certified, but also approves, in essence, a cause of action for breach of contract against a parent corporation that did not even own the subsidiary at the time the alleged oral promise was made, and who everyone acknowledges could not possibly be bound by the oral promise.
As noted in the Eleventh Circuit's opinion, Gossard asserted a tortious interference with contract claim against Adia, the parent company, because it allegedly "caused Nursefinders to violate its promise of noncompetition within a franchisee's territory." Gossard, 120 F.3d at 1231. In other words, Gossard claimed that Adia unlawfully interfered with Nursefinders' noncompetition agreement with Gossard because another of Adia's subsidiaries, Star-Med, over which Nursefinders obviously had no control, continued to compete with Gossard after Adia acquired it. That is the basis of the claim for tortious interference with a contract involved herein.[4]
The facts reflect that Adia purchased a franchise, Nursefinders, which had a pre-existing non-competition agreement with its franchisee, Gossard. In purchasing Nursefinders, Adia was not itself bound contractually to honor Nursefinders' non-competition agreement or restrain its business expansion. That proposition is undisputed. Thereafter, Adia purchased Star-Med, another healthcare company, which apparently had long been competing with Gossard within his franchise territory. In other words, Star-Med already had a commercial presence in Gossard's territory prior to its purchase by Adia, so that its acquisition did not change this dynamic of business competition one iota. Adia's purchase of Star-Med, by itself, constituted a simple change of ownership which may have had an incidental effect on Gossard and presumably others in the same industry. However, this was a lawful commercial transaction utterly beyond Nursefinders' control and a completely separate issue from Gossard's agreement with Nursefinders.[5]
The majority, even after recasting the certified question, completely fails to explain how Adia, or any other parent company, could be bound by its subsidiary's oral promise that no "parent or affiliate" would compete against its franchise. In other words, beyond the question of enforcing such an oral promise against the promisor, Nursefinders (a claim not even advanced by Gossard), the majority fails to discuss or cite any legal basis for enforcing such a promise against a parent company that did not even own Nursefinders at the time. Obviously a subsidiary could not make a binding legal promise that an "affiliate" or a "parent company" would not compete against the subsidiary's franchisee. Such an oral promise simply has no legal validity against Adia, the new parent, or Star-Med, Adia's subsequent acquisition, and certainly cannot serve as anything more than a "false prop" for a tortious interference with contract claim.[6]
*187 Further, it seems to me that our decision will certainly surprise the Eleventh Circuit and the district court, both of which have expressly noted that there is no Florida case law on point, to learn that we find controlling a case dealing with the tortious interference with a business relationship. Hence, the Eleventh Circuit concluded:
Contrary to Gossard's contention, his cases are distinguishable: They all involve at least a direct impact upon a contracting party's ability to perform its obligations.
Gossard, 120 F.3d at 1231 n. 1. It is worth adding, of course, that Gossard has never pled such a cause of action in this case, despite the fact that he has grasped for a cause of action throughout the life of this suit. See Gossard v. Adia Services, Inc., 922 F.Supp. 558, 560 (M.D.Fla.1995) (observing that Gossard's "theory of the tort wavered throughout the trial"). Indeed, in oral argument before this Court, Gossard essentially conceded that he was alleging some form of a breach of fiduciary duty, rather than tortious interference with contract by Adia.
In the final analysis, it appears that Adia was engaged in lawful business expansion which incidentally impacted Gossard's franchise and presumably others in the same industry. As the federal district court concluded:
While the defendant [Adia] may have "caused" Nursefinders to be unable to carry out the agreements within some broad dictionary meaning of that term, it did not cause Nursefinders to breach the agreements in the legal sense. The Restatement, which in essence requires a contracting party either to be induced not to perform, or to be prevented from performing, his contractual obligations, clearly demands something far more direct than what occurred here to Nursefinders.

Gossard, 922 F.Supp. at 561 (emphasis added). However, under the majority's new construction of the tort of intentional interference with contract, we can expect more circuitous and tenuous claims shoehorned into this cause of action, as those less successful players in the free market seek from the courts that which they could not retain or acquire in commercial competition.
KOGAN, J., concurs.
NOTES
[1] Comment h. to section 766 reads as follows:

Inducing or otherwise causing. The word "inducing" refers to the situations in which A causes B to choose one course of conduct rather than another. Whether A causes the choice by persuasion or by intimidation, B is free to choose the other course if he is willing to suffer the consequences. Inducement operates on the mind of the person induced. The phrase "otherwise causing" refers to the situations in which A leaves B no choice, as, for example, when A imprisons or commits such a battery upon B that he cannot perform his contract with C, or when A destroys the goods that B is about to deliver to C. This is also the case when performance by B of his contract with C necessarily depends upon the prior performance by A of his contract with B and A fails to perform in order to disable B from performing for C. This rule stated in this Section applies to any intentional causation whether by inducement or otherwise. The essential thing is the intent to cause the result. If the actor does not have this intent, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other.
[2] Further, while it is tempting, I would decline to speculate on whether any other causes of action may have arisen under the facts of this case.
[3] The majority has expanded the tort of intentional interference with contract far beyond its long-recognized legal bounds and into a chameleon-like tort that may be utilized to fit any perceived unfairness incidental to a legitimate business acquisition. The expansion of this tort under these circumstances gives new and foreboding meaning to the old legal adage "buyer beware", and amounts to nothing more than an economic penalty against a parent company lawfully exercising its right to purchase other businesses in the same industry.
[4] It is impossible to conclude that this series of events left Nursefinders with "no choice" but to violate its non-competition agreement with Gossard, Restatement (Second) of Torts, § 766 cmt. h (1979), or "affirmatively prevent[ed]" Nursefinders from observing the terms of its contract with Gossard. Gossard, 120 F.3d at 1231. In other words, Adia's purchase of Star-Med did nothing to "otherwise cause" Nursefinders to violate its non-competition agreement with Gossard. The exclusivity clause in Gossard's franchise agreement with Nursefinders provided that neither Nursefinders "nor any person or firm authorized or licensed by it shall establish an office for the purposes" of competing with Gossard within his franchise territory. Since it is undisputed that Nursefinders did not compete with Gossard in his territory and that Star-Med is not a firm "authorized or licensed" by Nursefinders, there is simply no basis in the record to argue that Nursefinders violated the exclusivity clause in its contract with Gossard. We are presented with the ironic situation where no one, including the plaintiff, Gossard, even claims that Nursefinders has breached its non-competition agreement with Gossard. Presumably this is why the majority relies on the oral promise of Nursefinders, as legally ineffective as it was, to conjure up a cause of action.
[5] Further, the majority opinion essentially converts an illogical noncompete agreement into a "poison pill" that precludes an acquirer, indisputably not a party to the agreement, from purchasing other competitors in the same industry.
[6] The majority opinion not only makes up and answers its own question, but its analysis also exemplifies a danger identified by the Restatement in 1979:

The several forms of the tort set forth in §§ 766 to 766B are often not distinguished by courts, and cases have been cited among them indiscriminately. This has produced a blurring of the significance of the factors involved in determining liability.
Restatement (Second) of Torts ch. 37 introductory note at 5 (1979). Compare this comment to the analysis in the majority opinion where the majority now somehow finds that Ethan Allen controls this case, a case based upon an allegation of interference with a contractual relationship, even though Ethan Allen concerns tortious interference with a business relationship, a separate and discrete cause of action in Florida since at least 1964. See Franklin v. Brown, 159 So.2d 893, 895 (Fla. 1st DCA 1964).