856 So.2d 600 (2003)
KING'S DAUGHTERS AND SONS CIRCLE NUMBER TWO OF GREENVILLE, Mississippi, A Mississippi Nonprofit Corporation, Appellant,
v.
DELTA REGIONAL MEDICAL CENTER; Emery Skelton, Chairman, Joe Patterson, George C. Bell, Anne Stark, Benjamin P. Folk, III, M.D., George E. Lewis, Stan Ingram, Members of The Board of Trustees of Delta Regional Medical In Their Representative Capacities as Such Trustees; and John Doe 1 and 2, Appellees.
No. 2001-CA-01960-COA.
Court of Appeals of Mississippi.
June 17, 2003.
Rehearing Denied September 2, 2003.
Certiorari Granted October 13, 2003.
*601 Nathan P. Adams, Philip Mansour, Greenville, attorneys for appellant.
Clifford C. Whitney, R.E. Parker, Vicksburg, attorneys for appellee.
Before SOUTHWICK, P.J., BRIDGES and CHANDLER, JJ.
BRIDGES, J., for the Court.
¶ 1. The King's Daughters and Sons Circle Number Two filed a complaint alleging that Delta Regional Medical Center, its chairman, and members of the board of trustees of Delta Regional Medical Center in their representative capacities as trustees, committed the tort of intentional interference with contract and intentional interference with prospective business relations. Initially, Delta Regional filed a motion for summary judgment based on lack of proper notice under the Mississippi Tort Claims Act, Miss.Code Ann. § 11-46-11. It subsequently filed a supplemental motion for summary judgment, which raised the issues upon which the trial court granted summary judgment, that there was no genuine issue regarding the fact that Delta Regional acted to protect its legitimate interest by preventing a potential conflict of interest that would have resulted if Health Group purchased King's Daughters. The trial court never reached the notice issue raised in the initial motion. King's Daughters now appeals to this Court.

*602 STATEMENT OF THE ISSUES
I. WHETHER THE TRIAL COURT MISAPPLIED MISSISSIPPI LAW IN TREATING QUORUM HEALTH GROUP, INC. AND ITS SUBSIDIARY QUORUM HEALTH RESOURCES, INC. AS ONE IDENTITY.
II. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT THAT DELTA REGIONAL ACTED TO PROTECT ITS LEGITIMATE INTEREST BY PREVENTING A POTENTIAL CONFLICT OF INTEREST THAT WOULD HAVE RESULTED IF QUORUM HEALTH GROUP, INC. PURCHASED KING'S DAUGHTERS HOSPITAL.
III. WHETHER THE CIRCUIT COURT ERRED AND MISAPPLIED MISSISSIPPI LAW IN HOLDING THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED THAT DELTA REGIONAL HAD "CONTRACTUAL RIGHTS" WITH QUORUM HEALTH RESOURCES INC. "RESOURCES" WHICH CAUSED THE ACTIONS OF INTERFERENCE BY DELTA REGIONAL WITH NEGOTIATIONS BETWEEN QUORUM AND KING'S DAUGHTERS TO BE PRIVILEGED.

FACTS
¶ 2. The King's Daughters and Sons Circle Number Two owned The King's Daughters Hospital (King's Daughters), in Greenville, Mississippi. Delta Regional Medical Center (Delta Regional) owned the only other hospital and health care facility in Washington County, Mississippi. Delta Regional is a community hospital under Miss.Code Ann. § 41-13-15 (Rev. 2001) and is administered by a board of trustees pursuant to Miss.Code Ann. §§ 41-13-29, 41-13-35 (Rev.2001). The individual defendants in this case were members of the board of trustees of Delta Regional.
¶ 3. Other key figures in this case include, Quorum Health Resources, LLC, formerly Quorum Health Resources, Inc. (Resources), and Quorum Health Group, Inc. (Health Group). (We will refer to the two companies collectively as Quorum). Health Group is a national hospital company, and Resources is its wholly owned subsidiary engaged in the hospital management business. Resources managed Delta Regional, pursuant to a management contract, during the time frame at issue in this case. Evidence in the record indicates that members of the Delta Regional Board of Trustees did not understand there to be any distinction between Health Group and Resources. The record also indicated that the board of trustees considered that "Quorum was Quorum," and that their hospital was a client of "Quorum," whether under the name Quorum Resources or Quorum Health Group. During his deposition, even Health Group's senior vice-president failed to differentiate between the two Quorums.
¶ 4. In an informal meeting on May 22, 1998, Resources and Health Group personnel met with three members of Delta Regional's board of trustees. Quorum requested the meeting with Delta Regional to explore the possibility of Delta Regional being for sale. Delta Regional informed Quorum that it was not for sale. However, Roland Richardson, Health Group's senior vice-president, testified that Emory Skelton, a member of the board of trustees for Delta Regional, casually mentioned to him that King's Daughters might be for sale. There was testimony in the record that indicates that any statement made by Skelton was an offhanded remark, which Health Group did not take to be an authorization to purchase King's Daughters.
*603 ¶ 5. Although Quorum signed a confidentiality agreement with Delta Regional, Quorum, nevertheless, failed to inform them of any planned purchase by Health Group of King's Daughters Hospital. An article, appearing in the Delta Democrat Times, a newspaper published in Greenville, Washington County, Mississippi, announcing that Health Group and King's Daughters had signed a letter of intent effective December 15, 1998, was Delta Regional's first notice of the possibility of Health Group purchasing King's Daughters. The letter of intent was a statement of intention by Health Group to purchase King's Daughters Hospital, provided that certain conditions were met.
¶ 6. Executives of Health Group admitted that there were critical items of the purchase and sale of King's Daughters that remained to be resolved after the execution of the letter of intent; the purchase price being one of the critical items. Health Group did not know what the final purchase price would be, given that the price was to be determined by what Health Group found during its due diligence, required according to Section 14 of the letter of intent. Health Group never completed its due diligence to the degree necessary to determine the purchase price.
¶ 7. On December 21, 1998, after learning of the letter of intent, Delta Regional held a board of trustees meeting to discuss the matter. Representatives from Quorum were also present at the meeting. One of the discussions, which was recorded in the minutes, included Quorum telling Delta Regional's board of trustees that "Quorum still had to do its due diligence regarding King's Daughters Hospital and therefore the acquisition of King's Daughters might not be consummated." The minutes also reflect that Carl Hagwood, Delta Regional's counsel, advised the board that it would be a violation of Quorum's fiduciary duties and would give rise to a damage claim by Delta Regional for Health Group to purchase King's Daughters. He continued by stating that "as a result of Quorum's contractual duty to manage the hospital and the longstanding relationship between Quorum and the board that Quorum had access to all information regarding the strengths and weaknesses of the hospital, the hospital's financial position, the hospital's short term and long term strategic plans, and the hospital's plans to respond to competition from a proprietary acquisition of the King's Daughters Hospital." The board voted to demand compensation from Quorum for the damage to Delta Regional from its conflict of interest.
¶ 8. Two days later, on December 23, 1998, Carl Hagwood wrote to Heath Group demanding money damages for the injury to Delta Regional resulting from the acquisition by Health Group of King's Daughters. Following the letter sent on December 23, numerous communications were sent between Quorum and Delta Regional which resulted in an unsuccessful attempt to reach a resolution of the Quorum conflict of interest.
¶ 9. Finally, in a letter dated February 4, 1999, Health Group advised King's Daughters of its intention to terminate the letter of intent. The letter stated that the reason for the termination was due to failure of the condition in Section 8(b), requiring approval by relevant regulatory authorities. Health Group was of the opinion that such approval was not possible, given Delta Regional's refusal to permit Quorum to terminate its relationship with Delta Regional. King's Daughters filed suit, after purporting to give notice to Delta Regional under the Tort Claims Act, Miss. Code Ann. § 11-46-11.

*604 ANALYSIS

I. WHETHER THE TRIAL COURT MISAPPLIED MISSISSIPPI LAW IN TREATING QUORUM HEALTH GROUP, INC. AND ITS SUBSIDIARY QUORUM HEALTH RESOURCES, INC. AS ONE IDENTITY.
¶ 10. When reviewing a lower court's decision to grant or deny a summary judgment motion, it is proper to employ a de novo standard of review. Hudson v. Courtesy Motors, 794 So.2d 999, 1002 ¶ 7 (Miss.2001) (citing Russell v. Orr, 700 So.2d 619, 622 (Miss.1997)).
¶ 11. King's Daughters argues that the trial court erred when it treated Health Group and Resources as one and the same. It goes on to state that piercing the corporate veil should be done with great caution and that nothing in the record supported the proposition that any factors or indicia normally present for piercing the corporate veil were present (i.e., parent and subsidiary corporations have common directors or officers, parent corporation finances the subsidiary, etc.). King's Daughters argues that Health Group and Resources were separate corporations and only Resources had a contract with Delta Regional. Therefore, Health Groupin contrast to Resourcesowed no duty to Delta Regional and could not legally have had a conflict of interest with Delta Regional.
¶ 12. First and foremost, both Health Group and King's Daughters clearly believed that there were significant conflicts of interest in the Quorum purchase of King's Daughters. In fact, section 4(j) in the letter of intent explicitly states: "Buyer [Quorum] will use reasonable efforts to eliminate conflicts of interest with Delta Regional Medical Center upon completion of the acquisition of King's Daughter's Hospital and further Buyer will defend, indemnify and hold harmless the Seller from any and all claims and/or actions or judgments resulting therefrom." King's Daughters admitted that it was the one to ask for the addition to section 4(j) to include the part about the buyer defending, indemnifying, and holding harmless the seller from any and all claims, etc.
¶ 13. Secondly, in order to prove tortious interference with a contract, a plaintiff must normally show these elements: (1) the acts were intentional and willful; (2) that they were calculated to cause damages to the plaintiffs in their lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice); and (4) that actual damage and loss resulted. Irby v. Citizens Nat'l Bank of Meridian, 239 Miss. 64, 121 So.2d 118, 119 (1960) (parenthetical in original); also see Par Industries, Inc. v. Target Container Co., 708 So.2d 44, 48(¶ 8) (Miss.1998). An interference is not wrongful and actionable if undertaken by someone in the exercise of a legitimate interest or right which constitutes "privileged interference." Vestal v. Oden, 500 So.2d 954, 957 (Miss.1986) (quoting Martin v. Texaco, Inc., 304 F.Supp. 498, 502-04 (S.D.Miss.1969)). Furthermore, in Pennsylvania, the plaintiff bears the burden of proving the lack of a lawful objective on the part of the defendant. Barlow v. Brunswick Corp., 311 F.Supp. 209, 212 (E.D.Pa.1970) (Pennsylvania law is identical to Mississippi's law of tortious interference).
¶ 14. In the present case, the trial court held that Delta Regional was indisputably acting in furtherance of its own legitimate economic interests in opposing the Health Group's acquisition of King's Daughters. In his order, the trial judge stated that the actions of Delta Regional through its board *605 of trustees and its attorney merely sought to protect the interests of Delta Regional in its own contractual relationship with its manager, Resources. The trial judge further stated that Delta Regional "had contractual rights which it believed to be in jeopardy by the negotiations between Quorum and King's Daughters."
¶ 15. The record reflects that Delta Regional's board members did not understand there to be a significant distinction between the two Quorums. The record also illustrates that the board did not understand the legal niceties of corporate veils, but they merely believed that Delta Regional faced imminent and potentially damaging competition from the corporate group of which Delta Regional's management company was a part. The Delta Regional board minutes reflect that the board demanded damages from Health Group only after being advised by its attorney, Carl Hagwood, that the transaction violated Health Group's fiduciary duties. Therefore, this Court finds that Delta Regional acted in good faith and is justified because of its honest belief that Health Group owed it a duty not to purchase King's Daughters.
¶ 16. Finally, Resources was an agent of Delta Regional for the management and operation of the hospital. The management agreement between Resources and Delta Regional specifically provides that Resources is the agent and Delta Regional is the principal. Resources stood in the shoes of and was the alter ego of the board of trustees, as far as management of the day-to-day operations of Delta Regional was concerned. First Jackson Securities Corp. v. B.F. Goodrich Co., 253 Miss. 519, 176 So.2d 272, 278 (1965).
¶ 17. Under Mississippi law, the agent's relationship with his principal is a fiduciary relationship. Costello v. Hall, 506 So.2d 293, 297 (Miss.1987). The Mississippi Supreme Court, quoting 3 C.J.S., Agency § 142, described this relationship as follows:
The relationship of principal and agent, being confidential and fiduciary in character, demands of the agent the upmost loyalty and good faith to his principal. Any breach of this good faith whereby the principal suffers any disadvantage and the agent reaps any benefit is a fraud for which the agent will be held accountable, either in damages or by judgment precluding the agent from taking or retaining the benefits so obtained.
Van Zandt v. Van Zandt, 227 Miss. 528, 538, 86 So.2d 466, 470 (1956). The Restatement (Second) of Agency, § 394 (1958) adds that "an agent is subject to a duty not to act or to agree to act during the period of his agency for persons whose interests conflict with those of the principal in matters in which the agent is employed."
¶ 18. Although the Mississippi courts have yet to consider the issue, the Florida Supreme Court took up the question of a parent company's duties to the clients of its subsidiary in Gossard v. Adia Services, Inc., 723 So.2d 182 (Fla.1998). (Although Florida does not have a statute directly addressing interference with or injuries in contractual relations, Florida's caselaw is consistent with Mississippi statutes). In Gossard, a company named Nursefinders had a franchise agreement with the plaintiff, Gossard, under which Gossard received an exclusive territory within his geographical area. Gossard, 723 So.2d at 183. The defendant, Adia Services, bought Nursefinders, and at the same time another Adia subsidiary named Star-Med began to compete with Gossard. Id. Even though Adia did not have a contractual relationship with Gossard and even though Star-Medand not Adia itselfwas the one competing with Gossard, the Florida *606 Supreme Court held Adia responsible for Gossard's damages resulting from Star-Med's Competition. Id. at 184-85.
¶ 19. Applying the Florida case here, Delta Regional is similar to Gossard, Heath Group is similar to Adia, and Resources is similar to Nursefinders. Health Group had no more right to compete against Delta Regional than Adia had a right to compete against Gossard. In fact, Adia's connection with the injury to Gossard is more remote than is Health Group's connection with the injury to Delta Regional. It was an Adia subsidiary and not the parent that did the competing in Gossard, while Health Group in the present case is the one which sought to compete directly with Delta Regional.

II. WHETHER THE TRIAL COURT ERRED IN HOLDING THAT THERE WAS NO GENUINE ISSUE OF MATERIAL FACT THAT DELTA REGIONAL ACTED TO PROTECT ITS LEGITIMATE INTEREST BY PREVENTING A POTENTIAL CONFLICT OF INTEREST THAT WOULD HAVE RESULTED IF QUORUM HEALTH GROUP, INC. PURCHASED KING'S DAUGHTERS HOSPITAL.
¶ 20. Under the law of Mississippi, recovery is only allowed against those who "intentionally and improperly interfere with the performance of a contract," while mere negligent interference is no cause of action at all. Morrison v. Mississippi Enterprise for Technology Inc., 798 So.2d 567, 574(¶ 23) (Miss.2001). In Vestal, the Mississippi Supreme Court held that "even if a party `interferes' with the formation or execution of a contract, if he has legitimate interest therein or a contractual right to perform said act, it is privileged and thus not wrongful and actionable." Vestal, 500 So.2d at 957 (italics omitted) (quoting Martin v. Texaco, Inc., 304 F.Supp. 498, 502-04 (S.D.Miss.1969)).
¶ 21. The trial judge found that, as a matter of law, Delta Regional's actions were based on a legitimate interest and were therefore privileged. This Court agrees. The management agreement between Resources and Delta Regional provided Delta Regional a "contractual right" to protest Quorum's acquisition of King's Daughters, and is therefore privileged.

III. WHETHER THE CIRCUIT COURT ERRED AND MISAPPLIED MISSISSIPPI LAW IN HOLDING THAT NO GENUINE ISSUE OF MATERIAL FACT EXISTED THAT DELTA REGIONAL HAD "CONTRACTUAL RIGHTS" WITH QUORUM HEALTH RESOURCES INC. "RESOURCES" WHICH CAUSED THE ACTIONS OF INTERFERENCE BY DELTA REGIONAL WITH NEGOTIATIONS BETWEEN QUORUM AND KING'S DAUGHTERS TO BE PRIVILEGED.
¶ 22. The Fifth Circuit has held in Knight v. Sharif, 875 F.2d 516, 524 (5th Cir.1989), that a letter of intent is not a contract. (Contracts to make a contract are not recognized under Mississippi law, unless the final agreement is to be a mere memorial of the agreement already reached.); see also 1A Corbin, Contracts, § 29 (1963). The Mississippi Supreme Court has also emphasized that, "[i]n order for a writing to be enforceable as a contract, agreement must be expressed as to all essential terms. If the document or contract that the parties agree to make is to contain any material term that is not already agreed on, no contract has yet been made; and the so-called contract to make a contract is not a contract at all." Etheridge v. Ramzy, 276 So.2d 451, 454 (Miss.1973). The court in J. Russell Flowers Inc. v. Itel Corp., 495 F.Supp. 88, 91 (D.C.Miss.1980) stated that it is a matter for the court and not the jury to determine *607 whether a letter of intent amounted to an enforceable contract.
¶ 23. In the present case, the letter of intent between King's Daughters and Quorum was a contract to make a contract and not the sort of final contract necessary to support a tortious interference claim. In addition, section 15 of the letter of intent is clearly titled "No contract" and states, "this is not binding and no party shall be entitled to any recourse in the form of damages ... in the event that there is a failure, for any reason, of the parties to agree on a term or terms and provisions of a Purchase Agreement." The record reflects, through depositions, that Quorum's senior vice president and its vice president both admitted that critical items of the purchase and sale of King's Daughters, such as the purchase price, remained to be resolved after the execution of the letter of intent. Quorum's officers did not consider the letter of intent to be a final agreement, and they believed that, until Quorum's due diligence was complete, material terms of the final contract (such as the purchase price) were yet to be determined. In Quorum's view, and consistent with the letter of intent, there was no agreement until the final purchase document was executed.
¶ 24. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.