[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14410
Non-Argument Calendar
_____

D.C. Docket No. 1:10-cv-22963-JJO


MKT REPS S.A. DE C.V.,

                                                        Plaintiff - Appellant,


versus


STANDARD CHARTERED BANK INTERNATIONAL (AMERICAS)
LIMITED,

                                                        Defendant - Appellee.


_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 6, 2013)

Before CARNES, BARKETT and MARTIN, Circuit Judges.

PER CURIAM:

MKT Reps S.A. DE C.V. (MKT) appeals the Magistrate Judge's order[1] granting Standard Charted Bank International (Americas) Limited (Standard) a judgment in its favor on MKT's claim that Standard tortiously interfered with business relationships. MKT argues that: (1) the district court abused its discretion by allowing a photocopied document to come into evidence; and (2) the district court erred in entering judgment against MKT on its tortious interference claim because the economic loss rule does not apply and there was evidence of "an intentional and unjustified interference."

## I.

MKT is an international tourism and marketing company. In 2006, MKT opened a bank account with Standard, under its former name, American Express Bank International. It asserts that the "account was opened specifically for international transactions or international funds transfers" between MKT and its clients and partners.

On March 13, 2009, Standard froze MKT's account. Standard's manager of client services emailed an MKT administrator to inform MKT that MKT "was

---

[1] On November 14, 2012, we issued a jurisdictional question to the parties regarding the finality of the Magistrate Judge's order. Specifically, the question asked whether there was a final decision "in light of the fact that it appears the parties only partially consented to the magistrate's jurisdiction." Upon review of the responses from both MKT and Standard, we conclude that both parties consented to the Magistrate Judge's jurisdiction, either explicitly or through their conduct, and thus the Magistrate Judge's order was a final order which we may review. See Roell v. Withrow, 538 U.S. 580, 589–90, 123 S. Ct. 1696, 1703 (2003).

unable to access its funds in the account due to an 'internal situation' at the bank."

The freeze prevented MKT from wiring funds to its international vendors.

MKT filed a complaint against Standard alleging claims for: (1) breach of contract; (2) tortious interference with business or contractual relationships; and (3) conversion.  Standard moved for summary judgment on all three counts.  On May 7, 2012, the Magistrate Judge granted Standard's motion on the breach of contract claim; denied the motion on the tortious interference claim; and withheld judgment on the conversion claim.  Shortly thereafter, the Magistrate Judge granted Standard summary judgment on the conversion claim.

A two-day bench trial was held on MKT's tortious interference claim. During the trial, the Magistrate Judge admitted into evidence a photocopied General Pledge Agreement (November 2008 GPA) executed by Ricardo Almiron, on behalf of MKT, to secure credit obligations of Juan Carlos Hinojosa.  After trial, Standard filed a motion for judgment on partial findings, under Federal Rule of Civil Procedure 52(c), requesting a judgment in its favor as a matter of law.  The Magistrate Judge ruled that Standard was "entitled to judgment in its favor" on the tortious interference claim because (1) MKT's claim was barred by the economic loss rule; and (2) "there [was] no record evidence to prove that [Standard] intended to interfere with [MKT's] business relationships."  MKT appealed.

**II.**

3

MKT's first argument before us is that the Magistrate Judge erred by admitting into evidence the photocopy of the November 2008 GPA. MKT argues that "there are genuine issues with the document's authenticity" and, therefore, the best evidence rule barred the admission of the agreement.

Subject to some exceptions, the best evidence rule requires admission of "[a]n original writing . . . in order to prove its content." Fed. R. Evid. 1002. "A duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. To properly authenticate a document prior to its admission, "a proponent [must] present sufficient evidence to make out a prima facie case that the proffered evidence is what it purports to be." United States v. Lebowitz, 676 F.3d 1000, 1009 (11th Cir. 2012) (quotation marks omitted); see also Fed. R. Evid. 901. "After meeting the prima facie burden, the evidence may be admitted, and the ultimate question of authenticity is then decided by the jury." Lebowitz, 676 F.3d at 1009.

We review a district court's decisions admitting or excluding evidence for abuse of discretion. Rosenfeld v. Oceania Cruises, Inc., 682 F.3d 1320, 1328 (11th Cir. 2012). "We [similarly] review the district court's authentication rulings for abuse of discretion" and the district court's determination "should not be disturbed . . . absent a showing that there is no competent evidence in the record to support

4

it." United States v. Siddiqui, 235 F.3d 1318, 1322 (11th Cir. 2000). The findings of fact that underlie the district court's evidentiary rulings are reviewed for clear error. Rosenfeld, 682 F.3d at 1328 n.9. We give "particular deference" to the district court's credibility determinations because it "had the opportunity to see live testimony." Lebowitz, 676 F.3d at 1009 (quotation marks omitted).

The district court did not abuse its discretion in determining that Standard presented enough "evidence to make out a prima facie case" that the November 2008 GPA was "what it purport[ed] to be." See Lebowitz, 676 F.3d at 1009 (quotation marks omitted). There was competent evidence to support the district court's ruling. For example, Jennifer Sierra, a former manager at Standard, testified that she had personal knowledge of the November 2008 GPA because she had seen it when MKT asked why it was not able to transfer funds. She testified that she got the document from Standard's Custodian Department and reviewed it at that time. She also testified that when documents are taken to the Custodian Department it verifies signatures against signature cards and the signature of Almiron on the document matched his signature card. On this record, the district court did not abuse its discretion by admitting this evidence and allowing the jury to determine how much weight to give the document.[2]

---

[2] MKT emphasizes that two separate General Pledge Agreements were introduced at trial, arguing that the agreements conflicted with one another thereby "cast[ing] serious doubts" on the November 2008 GPA's legitimacy. However, it would not have been clear error for the district

5

### III.

MKT's second argument on appeal is that the Magistrate Judge erred by ruling in Standard's favor on MKT's tortious interference claim. Under Florida law, "[t]he elements of tortious interference with a business relationship are (1) the existence of a business relationship . . . ; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship." Ethan Allen, Inc. v. Georgetown Manor, Inc., 647 So. 2d 812, 814 (Fla. 1994). One reason the Magistrate Judge gave for finding in Standard's favor was that MKT did not satisfy the third element of a tortious interference claim.[3]

The third element "requires a plaintiff to prove that the defendant manifested a specific intent to interfere with the business relationship." Fiberglass Coatings, Inc. v. Interstate Chem., Inc., 16 So. 3d 836, 838 (Fla. 2d DCA 2009) (quotation marks omitted); see also McKinney-Green, Inc. v. Davis, 606 So. 2d 393, 398 (Fla.

---

court to conclude that there were not, in fact, two conflicting agreements based on the Sierra's testimony about the different purpose each General Pledge Agreement served. Crystal Entm't & Filmworks, Inc. v. Jurado, 643 F.3d 1313, 1319 (11th Cir. 2011) (explaining that following a bench trial, we "review the district court's conclusions of law de novo and the district court's factual findings for clear error" (quotation marks omitted)).

[3] The Magistrate Judge set out two distinct bases for this conclusion: (1) the claim was barred by the economic loss rule and (2) MKT had not satisfied all the elements of a tortious interference claim. Because we agree with the Magistrate Judge's conclusion that MKT did not prove all the elements of its tortious interference claim, we need not address the economic loss rule.

1st DCA 1992); Ethyl Corp. v. Balter, 386 So. 2d 1220, 1223–24 (Fla. 3d DCA 1989).  As explained in § 766 Comment h of the Second Restatement of Torts, adopted by Florida in Gossard v. Adia Servs., Inc., 723 So. 2d 182, 185 & n.1 (1998), "[t]he essential thing is the intent to cause the result" because without that intent the actor's "conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other." Restatement (Second) of Torts § 766 cmt. h (1979).

We review de novo mixed questions of law and fact.  Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011).  A mixed question of law and fact may arise when "[t]he historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the relevant statutory . . . standard, or to put it another way, whether the rule of law as applied to the established facts is or is not violated."  Ornelas v. United States, 517 U.S. 690, 696–97, 116 S. Ct. 1657, 1662 (1996) (quotation marks and alteration omitted).

The district court did not err by determining that MKT had not shown that there was "an intentional and unjustified interference with [a business relationship] by [Standard]."  See Ethan Allen, Inc., 647 So. 2d at 814.  Although Standard intended to freeze the account, there is no evidence that it intended to interfere with any of MKT's business relationships.  Even if, as MKT alleges, its ability to perform its contracts with its vendors "necessarily depend[ed] upon the prior

7

performance by" Standard, there is no evidence that Standard "fail[ed] to perform in order to disable [MKT] from performing for [its vendors]."  Restatement (Second) of Torts § 766 cmt. h (emphasis added).  Therefore, MKT has failed to prove the third element of a tortious interference claim.

## IV.

For these reasons, we **AFFIRM.**

8